### No. 13,188.

### SUCCESSION OF A. KELLOGG.

### SYLLABUS.

The designation of an attorney for absent heirs is not an arbitrary requirement of law but one that is necessarily dependent upon the circumstances of each particular case; and same is essential only in case a necessity therefor is shown during a pending administration of a succession.

ON APPEAL from the Seventh Judicial District Court for the Parish of Madison. *Montgomery, J.*

*Catchings, Hudson & Catchings* and *W. M. Murphy* for Executor and Legatee, Appellant.

*David M. Evans, Jr.,* Plaintiff in Rule, Appellee; *in propria persona.*

Submitted on brief June 1, 1899.
Opinion handed down June 12, 1899.

---

The opinion of the court was delivered by

WATKINS, J. The testamentary executor and universal legatee under the will of Adams Kellogg, deceased, is appellant from a judgment sustaining a rule in favor of counsel for absent heirs, and fixing his fee at the sum of $200 and taxing same against both the succession and the legatee.

The grounds of appellant's resistance are the following, viz.:

"First.   Because he can not prosecute his demand against the suc-
" cession which was no longer in existence when he filed his rule.

"Second.   Because his appointment was unnecessary and illegal,
" there being no vacant succession and no proof of absent heirs.

"Third.   Because the succession was closed before he was appointed,
" and he has rendered no services to it.

"Fourth.  Because the counsel for absent heirs must be paid, if at
" all, out of the portion coming to the absent heirs."

It appears that Adams Kellogg died on the 13th of June, 1898, in
the parish of Madison, where he was domiciliated, without forced
heirs.   He left an olographic testament in which he instituted D. W.
Aiken as universal legatee, and designated him as executor and dis-
pensed him from giving bond.

That on the 17th of June—four days after the testator's death—the
instituted heir formally presented the will for probate, alleging that
deceased left no forced heirs, and prayed that he be placed in posses-
sion of the estate as universal legatee.

On the same date, the clerk of the court entertained the application,
viewed the will, heard the evidence, and entered a decree probating
the same, and placed the universal legatee in possession of said estate
as testamentary executor; and he was duly qualified as such on the
20th of June following.

On the 30th of June thereafter, the universal legatee presented a
petition to the judge of the parish, praying that the proceedings be-
fore the clerk be approved and homologated—his petition stating that
he entertained some doubt as to the jurisdiction of the clerk to render
the decree he did in the premises.

It appears from the minutes of court, that on the 5th of July—five
days later—the judge, on his own motion, appointed "counsel for ab-
" sent heirs, contradictorily with whom these proceedings shall be car-
" ried on"—the statement being made that "the matter of taking
" further testimony is suspended for the present."

But it appears, that on the same date, the judge rendered and signed
a decree approving and homologating the act of the clerk in the mat-
ter of the probate of the will of the deceased; and which further de-
clared in enunciative terms, "that, said D. W. Aiken, as the sole lega-
" tee under said will, be now placed in full possession, with the same
" rights as an heir of all the property, rights and credits comprising

" said estate, and (that he) be duly recognized as such, he having ac-
" cepted said trust."

The counsel for absent heirs filed a motion on the 12th of December,
1898—six months subsequent to the rendition of the aforesaid judg-
ment—in which he requested the court to fix his fee as attorney for
absent heirs as aforesaid, in such matter.

Taking cognizance of the appeal, the attorney for absent heirs re-
quests of this court an amendment of the judgment appealed from so
as to award him $300.

The judgment is against the succession of Kellogg and the legatee.

The counsel for absent heirs, in the course of his statement, says
that the deceased left no ascendants or descendants at his death; and
that he had only one relative, D. W. Aiken, his cousin, residing in the
parish, all of his other collateral kindred residing in States other than
Louisiana.

He further states that "although the matter, as thus presented, was
" to be tried contradictorily with the counsel for the absent heirs, the
" fact is that he was absent from the parish, attending the legislature
" as a reperesentative at the time."

It appears further, that the judgment of the court which terminated
the succession by sending the instituted heir into possession, did not
make any provision for the fee of counsel for absent heirs, notwith-
standing it was rendered and signed on the day of his appointment.

We make the following extract from the brief of the counsel for
absent heirs, viz.:

"The minutes do not show his absence, neither do they affirm his
" presence. There is no cross-examination by him, no pleading filed,
" and no witnesses introduced. The most noticeable fact is, that the
" judgment rendered, placing the legatee in possession, does not tax
" any fee for this counsel, appointed to represent these heirs, who are
" proved to be absent and unrepresented in this State. The trial of
" the matter was entirely ex parte, and the judgment utterly ignores
" the rights of the attorney so appointed. There is no question of this.
" The counsel for absent heirs testified that he was only present two
" or three days after his appointment, having gone to Baton Rouge.
" There was then no opportunity given this counsel to comply with
" the duties required of him under the Code, Article 1212. In fact it
" was impossible for any one to have done so. However, thereafter,

" he fulfilled every requirement of such duties as detailed in his testi-
" mony.

"This judgment so *ex parte* rendered, ratified the probate made by
" the clerk, and placed the legatee in full possession of the property."

Counsel for defendants in rule submit (1) that counsel for absent
heirs had no right of action against a *succession* as a legal entity after
it had been formally closed by the judgment of a competent court,
placing the testamentary heir in possession of the estate of the tes-
tator; (2) that he had not the right to thus summarily proceed by rule
against the legatee, personally.

In support of this proposition, they cite our opinion in Succession
of Duffy, 50th Ann., 79; 24 So. Rep., 270; Succession of Harris, 29
Ann., 743.

In the former case the plaintiffs in rule demanded an account with
a view to the collection of their fees as attorneys of the succession, and
the judge below dismissed same "on the ground that the heirs of the
" deceased had been put in possession on their application for that
" purpose to the court."

After citing the pertinent authorities, our opinion says:

"The heirs are bound for the debts.   But under our Code, their
" right to possession is not dependent on the account to be filed by the
" executor; in other words, without any such an account they are en-
" titled to possession, and when put in possession, the administration
" ends.   No account can be required of him by creditors; but the law
" preserves their full recourse on the heirs, and to that relief we must
" remit plaintiff in rule."

In Succession of Harris, 29 Ann., 743, our predecessors had this to
say of the compensation of the services of attorney for absent heirs,
viz.:

"It may not be amiss to remark that the fee of attorney for absent
" heirs, when such appointment is necessary, is properly chargeable to
" the portions of the absent heirs, and not to the body of the succes-
" sion; where, however, the services of that officer *have proved valuable
" to the succession and for that reason* a fee has been sometimes al-
" lowed (him) out of the succession funds generally.   The law, how-
" ever, does not contemplate this, and it is exceptional."

In the instant case the proof is quite clear and undoubted to the
effect that no services whatever were rendered to the succession by the
counsel for the absent heirs, as it was formally closed by the judgment

of the court sending the heir into possession on the very day of his appointment; and it is equally clear, that, under these circumstances, the appointment was unnecessary.

But conceding there was, technically, a necessity for his appointment, same was purely formal and perfunctory, as they were in the presence of an olographic will which designated Aiken as universal legatee, and a judgment of a competent court probating same and sending him into possession.

The provisions of the Code on the subject of the designation of an attorney for absent heirs, seem to indicate that it is an incident of *vacant* rather than of testate successions.

It is therein provided that "on the opening of a vacant succession,
" or of one of which the heirs, or a part of them are absent, etc., (R. C.
" C., 1210); the counsel appointed by the judge must, immediately
" after his appointment, search amongst the papers of the deceased,
" and get all the information he can, to assure himself of the place of
" birth of the deceased, and where his heirs reside, in order to corres-
" pond with them, etc." R. C. C., 1221.

The provisions of Articles 1162 and 1166 R. C. C. are quite similar.

It has often been held that the appointment of an attorney for absent heirs was merely directory, and the failure to appoint one was, at most, only a relative nullity.

Gibson vs. Foster, 2nd Ann., 503; Succession of Wadsworth, 2nd Ann., 966; Heirs of Herriman vs. Janney, 31st Ann., 276.

The record conclusively establishes the fact that there are no forced heirs of the deceased, and that he instituted Aiken universal legatee.

Consequently there were, in the sense of the Code, Article 1210, no "heirs" with whom the counsel for absent heirs had to communicate.

In succession of Rabasse, 47th Ann., 1452, we held that "there is no
" power to appoint an attorney for absent heirs, when the heirs are
" present or represented—(citing) R. C. C. 1210; Robouam's Heirs vs.
" Roubam's Executor, 12 La., 73; Addison vs. New Orleans Savings
" Bank, 15 La., 527."

The case stated in Succession of McLoughlin, 14th Ann., 400, is exceptional, as will appear from the following statement which we have extracted therefrom, to-wit:

"The counsel employed for Davis, curator, conducted the mortuary
" proceedings until the testamentary executor was appointed, and the
" universal legatee put in possession.

"These services were beneficial to the estate, etc.

"The appointment of an attorney to represent the absent heirs was " a necessary proceeding. The judge did not err in making the ap-" pointment, as is manifest from the silence of the testamentary ex-" ecutor and universal legatee, when it was in their power to have " opposed the appointment, or at least to have moved the court to " rescind the order."

In that case it is apparent that the administration of the succession was commenced by the appointment of a curator as of a vacant estate,. and the contemporaneous designation of an attorney for absent heirs; and, that, subsequently the testamentary executor and universal lega-tee appeared and took charge of same and went into possession.

That opinion being directed to that condition of affairs, simply held, that the fee of the counsel for absent heirs having been legally incurred *before* the testamentary executor and universal legatee pre-sented himself, it was a legitimate charge against the estate.

We think it was a just demand, and properly allowable under those circumstances, but we are decidedly of the opinion that that decision does not justify the claim of the attorney for absent heirs in this case, whose appointment was made on the very date the succession was closed and the instituted heir was placed in possession of the estate of the deceased by a decree which failed to make any provision for compensation for his services.

Our conclusion is, that the designation of an attorney for absent heirs is not an arbitrary requirement of law, but one that is neces-sarily dependent upon the circumstances of each particular case; and that it is essential only in case the necessity therefor is shown during the course of a pending administration of a succession.

Succession of Burnside, 35 Ann., 721.

For these reasons, the judgment appealed from is annulled and reversed; and and it is further ordered, and decreed, that the demand of the plaintiff in rule be rejected at his cost in both courts.