## MILBURN v. PROCTOR TRUST CO. et al.
### No. 91.

District Court, W. D. Louisiana, Alexandria Division.

April 15, 1940.

James W. Hopkins, of New Orleans, La., for plaintiff.

Camden K. Staples, of Alexandria, La., for defendant Proctor Trust Co.

Wise, Randolph, Rendall & Freyer, of Shreveport, La., and T. L. Foster, of Dallas, Tex., for defendant Sun Oil Co.

PORTERIE, District Judge.

On July 1, 1925, William Columbus Milburn mortgaged, by authentic act, the following property as security for the payment of a loan of $8,500, with the stipulation in case of default in the payment of any of the principal, represented by one note, or of the annual interest notes at maturity, or of the taxes when due, the whole amount should become immediately payable; the property securing the payment of the mortgage to be seized and sold under executory or other legal process, without appraisement, to the highest bidder for cash, rights to appraisement being particularly waived; and, further, the mortgagor confessing judgment in favor of the mortgagee, successors, or assigns, for the full amount of the debt, principal and interest, taxes, costs, and attorney's fees: "The Southeast Quarter (SE 1/4) of Section Nineteen (19) and the West Half (W 1/2) of the Southwest Quarter (SW 1/4) of Section Twenty (20) and the South Half (S 1/2) of Section Twenty-one (21), Township Two (2) South, Range Three (3) East. Together with all the improvements and machinery thereon situate." (In Avoyelles Parish, Louisiana.)

On March 15, 1932, the Proctor Trust Company, one of the defendants herein, being the bona-fide holder and owner, for valuable consideration before maturity, of the mortgage note, filed suit, via executiva, on the allegation that the interest due on January 1, 1932, had not been paid, and, therefore, the entire amount of principal and interest was then due and payable, together with 10% attorney's fees.

At the date of the filing of this suit in foreclosure of the mortgage, the original debtor, William Columbus Milburn, had died—February 29, 1932—and the defendants named in the action were the then living children of the mortgage-debtor and the grandchildren of the mortgage-debtor (children of predeceased children). The proceeding was one in rem—against the property mortgaged—based on the tenor of the original mortgage, which imported a confession of judgment. At the sale thus provoked, after full thirty-day advertisement, the Proctor Trust Company purchased all the property above described. The return of the writ of seizure and sale, duly recorded, showed a substantial part of the original debt still unpaid, to-wit: $7,480.28.

The Proctor Trust Company then, as a creditor in the above sum, petitioned the state district court to open for administration and inventory the succession of William Columbus Milburn, for the purpose of paying the debts of the deceased, suggesting the name of Guy Sherrill for administrator. Court order followed, issuing commission to a notary public and naming two appraisers to make inventory of all assets; letters of administration, after advertisement of the application for administration and inventory, were issued in due course to Guy Sherrill. Commission to sell the assets of the succession to pay debts was ordered regularly thereafter and real estate, comprising the sole assets, was sold to the Proctor Trust Company, not upon the first offering, held after full thirty-day advertisement, when there was no bidder, but upon a second sale, authorized by court order, after a second advertising of more than fifteen days, according to law. The price bid was $500; no other bidder appeared. Proces-verbal of this proceeding was made by the administrator and duly entered, followed by a judgment of court ratifying the proceeding, registered on January 7, 1933. There still then remained a good portion of the balance of creditor's judgment unpaid and, consequently, not paid today.

The property adjudicated to the Proctor Trust Company at this succession sale is described as follows: "The Southeast Quarter (SE 1/4), and the East Half (E 1/2) of the Southwest Quarter (SW 1/4), of Section Twenty; and the Southwest Quarter (SW 1/4), and the South Half (S 1/2) of the Southeast Quarter (SE 1/4), of Section Twenty-Two (22); and the South Half (S 1/2) of the Southwest Quarter (SW 1/4) of Section Twenty-Three (23), Township 2 South, Range 3 East." (In Avoyelles Parish, Louisiana.)

638

Petitioner, a grandchild of William Columbus Milburn, deceased, filed a petition in the state court in the form of a petitory action, on March 31, 1939, against the Proctor Trust Company and the Sun Oil Company, the latter having acquired mineral rights on the lands by lease from the Proctor Trust Company, praying that both the foreclosure proceeding and the succession proceeding be set aside, canceled and annulled, for reasons hereinbelow set out in detail, and, in legal consequence, praying that the mineral lease be likewise decreed set aside, canceled and annulled.

Defendants removed the case to this Federal court on amount and diversity of citizenship.

The grounds urged by petitioner, the court believes, will be sufficiently described by quotations from the pleadings and by the development of the reasons given in the course of this opinion.

Plaintiff seeks to be recognized as owner of an undivided one-fifteenth interest in all of the abovedescribed lands. As to certain of these lands, which she contends formed part of the community existing between her grandfather and grandmother, she claims to have inherited a one-thirtieth interest from each; as to the remainder, plaintiff claims to have inherited a one-fifteenth interest from her grandfather, it having been his separate property. She claims these inheritances by representation of her deceased father.

Plaintiff is one of five children of James F. Milburn, who was one of the six children of the grandparents, Lise Leblanc Milburn and William Columbus Milburn. The grandparents were married in 1871, and the grandmother, Mrs. Lise Leblanc, died intestate in 1899. There was no division of the community property.

In the course of trial, the mind of the judge travels hither and yon; self-queries are made. By the end of the trial, however, unless the evidence be quite contradictory, there fasten to the mind certain general and controlling conclusions. These conclusions are subject to the mental reserve that a final check should be made as to the applicable law.

The main conclusions in this case, except for the applicable law which might affect them, were these dominant ones:

(a) The money lender was in good faith, never really wanted the land that stood for the security of his money. From the beginning to the end, even after foreclosure had been made on the initially mortgaged property, followed by continued execution of the debt in that satisfaction of the deficiency judgment was sought on the other property of the decedent, the money lender tried to sell back the property acquired at both sales to any one or all of the heirs on extended payments and the purchase price to be only the amount of money expended.

(b) Likewise, on the other hand, the debtor was in good faith, and likely would have met his obligation but for the general want of profit in farming at the time and the consequent drop in land values. The equity with public support now, that the mortgagee should go no further for the satisfaction of his debt than against his security when public sale is had without appraisement, is not to control in this case. The former principle that the creditor may execute until there be left no more assets of the debtor, applied at the time of the contract and must apply now in this decision. The recent public expression is found in Act 28 of the Legislature for the year 1934.

(c) Because of these equities which might be interpreted in favor of the debtor, there should be excluded from the grasp of the creditor any and all property whose exclusion the law commands, to-wit, in particular, the half of any community property of the grandparents, because the surviving husband (mortgagor was a widower) could not bind for his debt the property of his deceased wife, naked title to which passed to their children at the time of the death of the wife, although the usufruct remained in the husband during his lifetime, without remarriage.

(d) But for the fact that the lands involved in this case are near or within the limits of a proved oil field, there would never have been an issue made by the plaintiff. All irregularities and technicalities pleaded would never have been sought and urged but for this enhanced potential oil value of the property.

(e) Unless there be statutes of limitation (prescription in Louisiana) which would prevent a decree leaving half of all probable community lands to the children and grandchildren, these should be returned.

We have skeletonized the main issues of the case, as follows:

A. Validity of foreclosure proceeding, provoked by mortgagee.

B. Validity of succession proceeding, provoked by not-fully-paid mortgagee, in character of a judgment creditor.

C. Validity of proceedings granted: A determination of ownership of property sold, with a view to annulling such sale to that degree if title was not in the debtor.

A. Validity of Foreclosure Proceeding.

Plaintiff avers "that no foreclosure proceedings were had against, or no notice given to, the succession of the late William Columbus Milburn, or any administrator or curator or other legal representative thereof, but the said Proctor Trust Company undertook to proceed in rem against the heirs of the said late William Columbus Milburn, although none of the heirs, including your petitioner, had accepted the said succession." Article XI of petition.

We find no merit in this contention. In the relatively recent case of Schreiber v. Beer's Widow & Heirs, 150 La. 676, 91 So. 149, 150, reading of which shows deliberate and final consideration of the points on rehearing, the applicable syllabus reads as follows: "Civ.Code, arts. 940–942, 1014, declaring that an heir, being invested with seizin, by operation of law, at the death of the ancestor, is considered the heir so long as he has not renounced the succession, must be read in connection with article 946, declaring that the heir's right remains in suspense until he decides either to accept or to renounce, so that an heir who has neither accepted or renounced the succession is considered the heir for the purpose of being cited and of standing in judgment in a suit against the succession, or in an action to compel him to declare whether he will accept or renounce, under Civ.Code, art. 1055, and Code Prac. arts. 977 and 979, but an heir is not presumed liable for the debts of the succession merely because he has not formally renounced."

An earlier case is Citizens' Bank v. Jorda's Heirs, 45 La. Ann. 184, 11 So. 876.

If there be any possible leaks in the applicable law quoted above validating the foreclosure proceeding and the ensuing good title in the defendants, the plea of prescription made and afforded under Act 231 of 1932 certainly cements them.

This Act (La.Civil Code, Art. 3543) reads as follows: "Any and all informalities of legal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, licensed auctioneer, or other persons, authorized by an order of the courts of this State, to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were part owners at the time of making it, and in the event of such part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication thereof."

The Act has received sanction and liberal application by the Supreme Court of Louisiana. That the plea of prescription covers the above objections urged by plaintiff is shown by the following cases: Morris et al. v. Foster et al., 192 La. 996, 189 So. 601; Abbott v. Pratt, 144 La. 741, 81 So. 296; Arceneaux v. Cormier, 175 La. 941, 144 So. 722.

But, alternatively (Art. XII of petition), plaintiff avers "Sheriff's sale and deed are and were null and void and without legal effect", because of:

"(1) No notice of demand for payment in the said foreclosure was given to your petitioner and the said notice purported to have been given by domiciliary service was null and void and ineffective in that' the demand for payment was handed to Murel Milburn Steel, who was not living in the same house with your petitioner.

"(2) No notice of demand for payment in the said foreclosure was given to the late R. E. Milburn, made defendant therein, and the said notice purported to have been given to the said Milburn was served upon Murel Milburn Steel, not living in the same house with the said Milburn, and the said Milburn was at home at the time of service and not absent as recited in the return thereon."

The record shows that Murel Milburn Steel was a niece of the plaintiff, was aged twenty-five at the time, was present, when served, at the home of plaintiff's father, and that plaintiff was present at this home at the time of service on Murel. Murel did not live there, however.

The court need not inquire further as to whether or not knowledge was conveyed by

Murel to plaintiff or to R. E. Milburn, plaintiff's uncle, very sick at the time and domiciled there, as the same plea of prescription previously considered in this opinion cures these irregularities fully. See Ring v. Schilkoffsky, 158 La. 361, 104 So. 115; Bryson v. Lee, 181 La. 1019, 160 So. 797; Thibodaux v. Barrow, 129 La. 395, 56 So. 339.

B. Validity of Succession Proceeding.

We now come to the succession sale. Art. XIII of plaintiff's petition alleges, as follows:

"That the purported sale in the succession of William Columbus Milburn to the Proctor Trust Company on January 7th, 1933 is and was null and void and without legal effect and did not convey title to the said Proctor Trust Company in that—'

"(a) No letters of administration issued to the said Proctor Trust Company or its representative, Guy Sherrill, as it appears from the record in the said purported succession proceedings.

"(b) No attorney was appointed to represent the absent heirs, viz.: Richard W. Milburn, Thera L. Milburn, William E. Milburn and Olive May Milburn, who were at the time and are still residents of the State of California and no attorney or curator was appointed to represent the then minor heirs residing in Louisiana, viz.: Mildred Milburn and James F. Milburn, Jr.

"(c) No notice of taking of the inventory or of any of the other proceedings in the purported succession was given to any of the heirs of the late William Columbus Milburn, including your petitioner.

"(d) No notice was given to, or demand made on, the heirs of the late William Columbus Milburn, including your petitioner, to accept or renounce the said succession.

"(e) The said Proctor Trust Company and its representative, the said Sherrill, were without any right to provoke or bring about an administration of the succession of the said William Columbus Milburn as neither one of said parties was a creditor thereof.

"(f) The said lands belonging to the succession of the said William Columbus Milburn were improperly and illegally offered for sale at public auction without any notice to any attorney for absent heirs or attorney appointed to represent the said minors residing in the State of Louisiana.

"(g) The said lands included in the said succession sale were illegally sold to the said Proctor Trust Company, without any first offering thereof, after thirty days advertisement, and due notice to the heirs of the said William Columbus Milburn, including your petitioner, and a sale was made to the said Proctor Trust Company at a purported second offering with only fifteen days advertising and without any notice thereof to the said heirs of the purported sale.

"(h) Although the said Proctor Trust Company, through its representative, Guy Sherrill, as appears fully from the record in the purported succession proceedings, provoked the administration of the succession and undertook to administer the same, the said Proctor Trust Company pretended to purchase the said property at the said sale held on January 7th, 1933, at an auction conducted by its own representative and agent, the said Sherrill, for and on behalf of the said Proctor Trust Company, and the said Sherrill acted both as auctioneer and as purchaser for the said Proctor Trust Company; and the said sale is and was an absolute nullity under Article 1146 of the Louisiana Civil Code and Revised Statutes Section 157 (Dart's Louisiana General Statutes, Section 500).

"(i) The said Proctor Trust Company and its agent and representative Guy Sherrill, were fully cognizant at the time of opening the said purported succession that an undivided half interest in and to the SE 1/4; E 1/2 of SW 1/4 Section 20; SW 1/4 Section 21 and SW 1/4 Section 22, Township 2 South, Range 3 East, did not belong to the late William Columbus Milburn and was not liable for his indebtedness and was the property of the heirs of his predeceased wife, but notwithstanding the said Proctor Trust Company, and its said representative, had the said half interest belonging to the said heirs of the said Mrs. William Columbus Milburn included in the inventory and pretended to sell the same to itself, the said Proctor Trust Company, illegally and improperly."

We shall consider the points in the order alleged.

■ (a) This falls, as at trial of case, certified copy of letters of administration was filed. These letters are found by the court to be in proper legal form.

■ (b), (c), (d), and (f) We are of the view that in the case of succession proceedings to pay debts of the deceased, an order for sale need not be had contradictorily with the heirs, who, of necessity, have only a residuary interest.

See Lesseps v. Lapène, 34 La.Ann. 112; Herriman v. Janney, 31 La.Ann. 276; Succession of Kellogg, 51 La. Ann. 1304, 26 So. 262; Tertrou v. Comeau, 28 La.Ann. 633; Succession of Lehmann, 41 La.Ann. 987, 7 So. 33.

The court feels that the language of the Supreme Court of Louisiana, through one of its most eminent chief justices, Bermudez, in the ancient case of Lesseps v. Lapène, 1882, cited supra, is most appropriate, and uttered in such a fine judicial style that we had perhaps better quote in extenso than try to emulate or surpass. 34 La.Ann. from page 116 on, we have:

"The succession of Lesseps was notoriously, thoroughly insolvent. Its creditors were, to all appearances, the only parties interested in its speedy and economical liquidation and settlement. His heirs had none but a contingent residuary interest, depending upon a balance in the hands of the succession representative, in money or property, after payment of all the acknowledged and recognized creditors. It is then, and then only, that their interest could take semblance and form. They had not accepted the succession unconditionally and, even then, could not have taken the seizin from the executor, without providing him with the means to pay the creditors, these insisting. The fact is, they did not do so. Their interest being very remote, they stood aloof from the proceedings, totally indifferent to the course to be pursued.

"There would have been no necessity to notify them of any application for the sale of the property. The advertisements preceding the sale would have been sufficient notice. They would have had the right to arrest the sale by paying the debts, or showing that none existed.

"In cases of thoroughly insolvent successions, it is an error to suppose that the law requires that the settlement of the same shall be obstructed and rendered cumbersome and more onerous, by the giving of notices of any kind to the heirs, whoever they be, of age or minors, present or absent; for it is only on the contingency that there exists a residue, in other words, that the forces of the succession are ample to satisfy and discharge its liabilities, and that there shall remain a surplus, that the heirs are considered as having an interest involved in it and must be notified. ·

"The duty of the heirs, or of their representatives, is to keep a watchful eye on the proceedings, as they are developed, and to make opportune opposition, in the form pointed out by law, to whatever might prejudice them.

"Why should they, by representation of the insolvent deceased, be entitled to such notices and citations, when their author, had he lived and made a judicial surrender of his property to his creditors, would not himself have been entitled to any?

"The affairs of an insolvent debtor going to judicial bankruptcy are settled without such formality. The affairs of an insolvent deceased should not be required to be liquidated in a different mode, in the absence of any law to the contrary. 'Ubi eadem ratio, eadem est lex.'

"We regard the law relative to notices to heirs in successions, as requiring such, only where the successions are really or apparently solvent, and it is proposed to establish and apportion a residue among the heirs of the deceased. Heirs opposing an account could not disturb it, unless error, fraud or injury were shown. They cannot be permitted to set up, after judgment, that which they could have alleged and did not aver before judgment, so as to upset what was concluded by the judgment homologating the account, and overturn titles resting upon the proceedings.

"If heirs stand by and tolerate the settlement of an estate in which they are concerned, by the sale of its property, by application of its funds, by an account exhibiting its assets and liabilities, and a deficiency towards full payment, and permit the account to be published and homologated, without opposition on their part, the proceedings thus culminating, become conclusive upon them, and cannot afterwards be questioned by them.

"The judgment is binding on the creditors and legatees, who are primarily interested, and operates in like manner on the heirs, who are secondarily concerned, when there exists no residue in their favor. The binding effect, which the judgment on the account thus acquires, continues afterwards.

"The principle which dispenses with notices of sale to heirs, when a sale is

sought to pay the debts and charges, even in a solvent succession, certainly relieves them in insolvent estates, throughout all the proceedings, specially concerning the account showing the active and passive and the insolvent condition of the succession, and it is manifest from it that no residue accrues to the heirs. These conclusions are sustained both by reason and law and by equity.

"We deem it sufficient to refer to authorities, without analyzing them separately." (Then follows a long list of cases in support.)

Chief Justice Bermudez, with the plea of res judicata and the plea of five years' prescription both before him, 34 La.Ann. at page 114, makes use not of prescription but of res judicata entirely in his reasoning. Though it seems that the lower court had sustained both pleas, 34 La.Ann. at page 114, Judge Bermudez, in closing his opinion, said:

"We consider that by the final account and tableaux presented and homologated without opposition, the status of the property claimed in this writ has been adjusted and settled as having passed from the estate of the deceased.

"The District Judge so viewed the matter. We find no error in his finding."

We are in accord, and see no basis for, nor the necessity of, the plea of prescription to protect the defendants.

■ However, after study and examination of the law and jurisprudence of the state of Louisiana, we are of the opinion that the content of the above items (b), (c), (d) and (f) qualify clearly as "informalities in public sales of real and personal property", specified in Louisiana Act 231 of 1932, being the present reading of Article 3543 of the Civil Code of Louisiana, quoted above. This prescriptive provision formed a part of the Civil Code of Louisiana of 1870 and the amendment of the article of the Code by Act 231 of 1932 is expansive instead of being restrictive of the former article.

■ (e) This court finds nothing in the record, either from the oral evidence or documentary proof, that has any semblance of support of the allegation in item (e). The return of the writ in the foreclosure proceeding shows a credit of $2,870.72 applied to the original indebtedness of $8,500. The balance unpaid, $7,480.28, which deceased mortgagor had confessed as part of the original whole, was such a debt as gave "right to provoke or bring about an administration of the succession of the said William Columbus Milburn", the original mortgagor-debtor. This balance of the debt was made, and correctly so, the basis of the petition for administration and inventory.

(g) The facts, oral and documentary, adduced at the trial show there was a first offering after thirty days' advertisement; and further, there being no bid at the first offer, there was a second offering after fifteen days' advertisement. See proces-verbal, Administrator's deed, Exhibit 0.

As to the other allegations under this item (g), to-wit: want of due notice to the heirs of William Columbus Milburn of the sale of the succession assets under the thirty-day advertisement and the subsequent fifteen-day advertisement, no notice was necessary. The argument and cases cited under item (b), above, supporting the plea of res judicata and, as a legal factor of safety, the plea of prescription of five years, are applicable. Therefore item (g) is of no avail to plaintiff.

■ (h) Under this item, we should decide just what were the relations between Proctor Trust Company, foreclosing creditor, and Mr. Guy Sherrill.

The evidence discloses that Mr. Sherrill has never owned any stock in the Proctor Trust Company, was employed (as he resided in the city of Alexandria, Louisiana, located about forty miles from the lands at issue) to make collections on the debt. He services in the same manner a number of other out-of-state owners of mortgages on Louisiana real estate. Executory process was had on the mortgage in the very heart of our recent depression. This is emphasized by the fact that no one appeared at either one of the two sales to make any kind of bid on the property, except the foreclosing mortgage creditor. The Proctor Trust Company, quite undesirous of becoming burdened with the unprofitable ownership of real estate, as they are in the business of lending money for the interest only, tried to save costs as much as was legally possible. The court is of the view that even though an administrator other than Mr. Sherrill had been appointed by the court and that administrator had sought legal advice from someone other than Mr. Camden K. Staples, who appears in these proceedings as the attorney of the foreclosing creditor, there would have been no

better result in the way of bidding on the property. The record discloses that Mr. Staples, attorney for the Proctor Trust Company, was present in person at the sale and entered the bid of the Proctor Trust Company. Transcript, p. 78.

If a special auctioneer had been employed, instead of the administrator acting as auctioneer and offering the property for sale himself, we believe no better result would have been had. Mr. Sherrill, acting as auctioneer, was not a bidder. There was no fraud intended by the foreclosing creditor.

Counsel for plaintiff stresses strongly the provisions of Article 1146 òf the Civil Code of Louisiana under item (h). We quote the article in full:

"Every curator of vacant succession or of absent heirs is prohibited from purchasing by himself, or by means of a third person, any property, movable or immovable, entrusted to his administration, under the pain of nullity and responsibility for all damages caused thereby.

"Any executor, administrator, curator of vacant succession, or tutor, may purchase at the sale of the effects of the deceased, whose estate he may represent, when he is the surviving partner in the community or ordinary partnership, or an heir or legatee of the deceased or any mortgaged property when he is the mortgage creditor, or any property encumbered with a vendor's lien when he has a claim secured by such vendor's lien; and all purchases so made shall be considered as valid and binding as though made by any disinterested third party, and shall have full force against minors, interdicted persons, and married women."

By the overwhelming preponderance of the evidence, the court finds that the first paragraph of the Codal article is inapplicable. Mr. Guy Sherrill in no manner bought any of the property individually. The substantial improvements, made on the property by the Proctor Trust Company since its purchase, show its good faith. Having been the owner and the possessor now for seven years, and having exercised all the usual attributes as such, any supposition but that the Proctor Trust Company bought for itself is forestalled. There is an absolute want of evidence that Sherrill is to ever own all or any part of the property.

Since we are satisfied that there was no collusion between the Proctor Trust Company and Mr. Sherrill; that Mr. Sherrill has not purchased, directly or indirectly, for himself; that he did not stand in lieu of the Proctor Trust Company, but acted for himself, as an individual, as administrator by appointment of the court, the second paragraph has no bearing. Only in the case when the administrator and the purchaser become one and the same person do the exceptions come into play.

Therefore, there is no merit in the objections contained in item (h).

The allegations under item (i) have to be considered under main head (C), because the question therein is no more the form and validity of the foreclosure proceeding on the conventional mortgage or of the succession proceeding provoked by the ordinary creditor, but the question is whether or not the title to the items of real estate sold was in the judgment debtor.

C. Analysis of Title to Property Sold.

There are three parcels of property in question; they are:

(1) SE 1/4 and E 1/2 of SW 1/4 of Section 20;

(2) SW 1/4 of Section 21;

(3) SW 1/4 of Section 22.

(1) It is pleaded by the plaintiff and admitted by both defendants that this property was acquired by William Columbus Milburn during his marriage with Lise Leblanc.

"In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold a usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage." So reads the Civil Code of Louisiana, Article 916.

William Columbus Milburn exercised the usufruct of this property from the year 1899, the date of the death of his wife, until his own death on February 29, 1932—a period of thirty-three years; he never remarried. At his death, the usufructuary title joined the naked title that had been in the children since the death of the wife and mother, to cause the full title, naked and usufructuary, to be in the children. By no right of law could it be included in the assets of his succession.

The defendants have urged the loss of right in the plaintiff, by prescription of thirty years, to accept and claim her grandmother's succession. The point made is that thirty years have elapsed since the death, on October 28, 1899, of Lise Leblanc, the grandmother, to the date of the instant suit.

This plea cannot prevail. The joint meaning of Articles 941, 977, 1014, 1030 and 1031 of the Civil Code, under the circumstances of the instant case, has been given interpretation by the Supreme Court of Louisiana in Generes v. Bowie Lumber Company, 143 La. 811, 79 So. 413. From 79 So. at page 418, we quote: "In the precise language of article 941 of the Code, he was considered as being seized of the succession; that is, he was vested with the right of possession, though not with possession in fact. He was therefore one of those heirs who had no other right or faculty to be exercised within 30 years or to be lost by the prescription established by article 1030 of the Code, except the right or faculty of *renouncing* the succession." (Italics supplied.)

Again, more recently, the court, in Tillery v. Fuller, 190 La. 586, 182 So. 683, 695, rehearsing for a second time the jurisprudence which had previously been fully compared in the Generes v. Bowie case, said (quoting from the older case of Bendernagel v. Foret, 145 La. 115, at page 128, 81 So. 869, at page 874): " 'In other words, as to a coheir who has accepted the succession, or as to the heir next in degree who has accepted, the heir at law who has not accepted becomes a stranger to the succession at the end of 30 years. But, as to a mere possessor without title and without the benefit of prescription acquirendi causa, the heir at law, who is invested with seizin, or the right of possession, by mere operation of the law and without having to manifest an intention to accept the succession, does not lose his right to accept by failing to exercise it within 30 years. * * * What the heir at law stands to lose by the prescription of 30 years (except, of course, as to his coheirs or heirs next in degree who have accepted) is the right to renounce the succession. Our ruling in Generes v. Bowie Lumber Company, in that respect, is consistent with the dissertation of Fuzier-Herman, vol. 2, p. 91, particularly comment No. 22; and what was said on the subject in Harang v. Golden Ranch Land & Drainage Co. (143 La. 982, 79

So. 768) (on rehearing) is precisely in accord with the French author.' "

No coheir of, nor any heir next in degree to, the plaintiff or plaintiff's father, has accepted the grandmother's succession. The evidence is not in contest on this point. Therefore, the plaintiff is not "a stranger to the succession at the end of 30 years."

Defendants, in their opposition to half of the community property going back to the heirs of the grandmother, show that the taxes on all of the property, community property included, were paid for the year 1931 by Guy Sherrill as administrator; that this payment of taxes, in the total of $268.93, was listed in the administrator's final account; that therefore the sale by the succession of William C. Milburn of the undivided half of the community property, though not the property of the deceased, should be declared valid.

We find no account of the administrator filed in the record; however, we shall rule now as if it were of record and the item of taxes paid appeared therein, as alleged. Counsel for plaintiff, however, says, in his brief, that no item for taxes paid appears. In the petition for administration and inventory, the item of taxes for the year 1931 as being due, even on the succession property itself, was not listed.

William Columbus Milburn died February 29, 1932; having been the usufructuary of the half of the community property during the year 1931, he owed the taxes as his separate debt. See Article 578, Louisiana Civil Code.

There can be no lien for taxes against the half of the community property belonging to the heirs. No subordination of rights by the state through its tax collector was given, or could legally be given, to the administrator, as agent of the dead debtor. From these facts of record and the law applicable, the court is unable to permit the defendants to acquire title, when such title did not vest in the succession, from which they hold.

The principle of the case of Womack v. McCook Brothers Funeral Home et al., La.App., 192 So. 756, is not applicable here for the facts there are in too great variance from those of the instant case.

Though not directly pleaded, plaintiff in her brief makes much of the fact that at the succession sale, in the face of

an inventory reaching nearly $4,000, the price paid by the Proctor Trust Company at the second offering, following the regular and legal fifteen-day advertisement, was only $500. The Louisiana Code of Practice, Articles 680–682, are, without possible ambiguity, to the effect that at the second bidding no restrictions exist as to appraisement or as to amount bid at which adjudication is to be had.

The law and equity direct us, therefore, to sign a decree which will annul and erase from the records the title purportedly conveyed at succession sale to the Proctor Trust Company of the undivided one-half of the property described under this item.

■ (2) and (3) The property under these items may be considered together.

Here are the actual pleadings (Article VI of petition): "That the said William Columbus Milburn went into actual, physical possession of the whole of the SW 1/4 of Section 21 and SW 1/4 of Section 22, Township 2 South, Range 3 East, Avoyelles Parish, Louisiana, on or about April 17th, 1866 and remained in continuous, open and notorious possession thereof at all times until the date of his death, and that the said Milburn acquired for the community existing between himself and his wife in 1876 by ten year acquisitive prescription, or alternatively in 1896 by thirty year acquisitive prescription a good and valid title to this said land; alternatively, and only in the alternative, in the event this Honorable Court should hold that the said land was not acquired as aforesaid by the community, then your petitioner shows that the said land was acquired by the said William Columbus Milburn by deed dated March 19th, 1866 from the widow Henry B. Milburn, recorded in Conveyance Book HH Page 244 of the conveyance records of Avoyelles Parish, Louisiana, and by deed dated April 17th, 1866, from the said widow Henry B. Milburn, recorded in Conveyance Book HH Page 311 of the conveyance records of Avoyelles Parish, Louisiana, and that by errors or inadvertences this said land was not described in recording said deeds; and in the second alternative, and only in the alternative, your petitioner shows that the said William Columbus Milburn acquired this said land as an heir of his mother, the said Widow Henry B. Milburn."

Defendants made similar answer, word for word (Article 6 of answer of each defendant): "Defendant admits that William C. Milburn acquired the SW 1/4 of Sec. 21 and the SW 1/4 of Sec. 22, Twp. 2 S R 3 E, Avoyelles Parish, La. by deed dated March 19, 1866 from the widow of Henry B. Milburn, recorded in Conveyveance Book HH, page 244 and by deed dated April 17, 1866 from the widow of Henry B. Milburn recorded in Con. Bk. HH, page 311 of the Conveyance records of Avoyelles Parish, and that through error or inadvertence this said land was not described when the recorder recorded said deeds. Except as are admitted, the allegations of paragraph six (6) of plaintiff's petition are denied."

Plaintiff urges the content of Art. 2405 of the Civil Code of Louisiana, as follows: "At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited."

Referring back to pleading of plaintiff, Art. VI, above quoted, the mention of the same date—"April 17, 1866"—to mark the date of the beginning of acquisitive prescription as well as the date of purchase by William Columbus Milburn, from his mother, widow Henry B. Milburn, makes the court believe that both of these tracts of land are really separate property. They came to the grandfather of plaintiff during the year 1866, whilst he was single, and are his separate property. From the witnesses at the trial, the pleadings and the documents filed, the evidence is one way, and the court is unable, in good conscience, to hold otherwise.

As to one of these two tracts, the father of plaintiff in dealing with his father, William Columbus Milburn, the grandfather of plaintiff, in an authentic act, dated February 14, 1927, described it as "being the separate estate of the said William C. Milburn." The authentic act had a dual purpose: (1) The lease of the lands for one year, and (2) an option of sale on the lands.

This evidence is of the character (father and son, before notary and attesting witnesses) that gives it very high probative value. It not only precludes the thought of calling the particular quarter-section being leased as community property, but, because of the allied and similar nature of

the pleadings made as to the two quarter-sections, it becomes strongly indicative of the fact that the other quarter-section, also, is undoubtedly separate property.

The prayer of the plaintiff as to these two quarter-sections is denied; the preponderance of the evidence is not with her.

A judgment in consonance with this whole opinion will be signed when presented.