### MILBURN et al. v. PROCTOR TRUST CO. et al.

### No. 316.

District Court, W. D. Louisiana, Alexandria Division.

April 15, 1944.

James W. Hopkins (of Rosen, Kammer, Wolff, Hopkins & Burke), of New Orleans, La., for plaintiffs.

Camden K. Staples, of Alexandria, La., for defendant.

PORTERIE, District Judge.

In the main this case is an identical case to No. 91, District Court, Western District of Louisiana, Alexandria Division, Milburn v. Proctor Trust Company et al., 32 F.Supp. 635. Since the plaintiffs in each case have the same cause of action, deriving from the same source, to-wit, as heirs of William Columbus Milburn, this previously decided case has finality, for it was approved at 122 F.2d 569, and a writ sought thereafter was refused by the Supreme Court. See Memorandum Cases, 314 U.S. 698, 62 S.Ct. 479, 86 L.Ed. 559.

So repeating and making use of the full content of our former opinion at 32 F.Supp. 635, with its finding of facts and conclusions of law, we give the same judgment in favor of the plaintiffs in the instant case —this being allowing the plaintiffs their fractional share in that certain tract of land which should never have formed a part of the succession of William Columbus Milburn,—but denying all of their other claims.

There is a new and additional issue presented in this case. This issue is represented by a counterclaim filed by the de-

fendant on the point that when the plaintiffs attacked the succession proceedings, as well as the original foreclosure proceedings on a mortgage debt of the common parent, they, under the laws of Louisiana, accepted the succession unconditionally and made themselves individually liable, each for his virile share, for all the debts of the succession. Louisiana Revised Civil Code, Articles 988, 1013, 1422 and 1423. Griffing v. Taft, 151 La. 442, 91 So. 832; Foster v. Spann, 170 La. 1019, 129 So. 622, Crouch v. Richardson, 158 La. 822, 104 So. 728; Succession of Aronstein, 51 La.Ann. 1052, 25 So. 932. The story of procedure in the instant case is identical with that of the decided case. The suit was instituted by the plaintiffs in the state court (June 27, 1940), was removed by the Proctor Trust Company to the federal court (July 9, 1940), and the counterclaim was filed by Proctor Trust on November 11, 1943, in the federal court. The plaintiffs on November 22, 1943, moved to dismiss and strike the counterclaim for the following reasons:

(1) "The counterclaim fails to state a claim against plaintiffs for which relief can be granted."

(2) "This court is without jurisdiction on the following grounds, to-wit: (a) That the defendant, Proctor Trust Company, although doing local and intrastate business in Louisiana continuously since 1932 and earlier, failed to qualify to do business in Louisiana until May 20, 1943, and has failed to pay Louisiana Franchise and other Corporation Taxes, and that the District Court of Avoyelles Parish, . Louisiana, where this action was filed, is and was without jurisdiction of any reconventional demand or counter claim of defendant, and defendant was and is without right to sue or counter claim in the said District Court. (b) The counter claim is not necessarily connected with and incidental to plaintiffs' action."

(3) "To strike the counter claim on the following grounds, to-wit: (a) The counter claim has been filed too late and untimely. (b) The defendant, Proctor Trust Company, filed during the year 1941 suits in various district courts of Louisiana against all plaintiffs herein, making the same demands now made in the said counter claim, and that the said suits in the State District Courts are still pending with the exception of that filed against your plaintiff, Mrs. Ethel M. Milburn, wife of George C. Pope,

wherein the exceptions filed by the said Mrs. Pope were maintained in the District Court and affirmed in the Second Circuit Court of Appeal of Louisiana; and defendant filed on September 13, 1943 another suit against the said Mrs. Pope in the District Court of Avoyelles Parish, which now pends; and plaintiffs, through their attorney, have filed pleadings in all of the said suits. (c) Defendant, Proctor Trust Company, has waived any rights to file the said counter claim, and is now estopped to file or maintain the said counter claim."

As a partial finding of facts we quote the following stipulation by the parties:

"The defendant, Proctor Trust Company, filed during the year 1941 suits in various district courts of Louisiana against all plaintiffs herein, making the same demands now made in the said counter claim, and that said suits in the State District Courts are still pending with the exception of that filed against your plaintiff, Mrs. Ethel M. Milburn, wife of George C. Pope, wherein the exceptions filed by the said Mrs. Pope were maintained in the District Court, and the Second Circuit Court of Appeal of Louisiana maintained the exception of the lack of right or authority of Proctor Trust Company to sue in the District Court, and lack of jurisdiction of the Court to consider and entertain the suit on the ground that the Proctor Trust Company, being a foreign corporation and doing local and intrastate business, had failed to qualify to do business in Louisiana, and had not paid the corporation franchise taxes as required by law, ([Proctor Trust Co. v. Pope, La. App.] 12 So.2d 724) and defendant filed on September 13, 1943, another suit against the said Mrs. Pope in the District Court of Avoyelles Parish, which now pends; and plaintiffs, through their attorney, have filed pleadings in all of the said suits.

"That the defendant, Proctor Trust Company, although doing local and intrastate business in Louisiana continuously since and including 1932, failed to qualify to do business in Louisiana until May 20, 1943, and has not paid Louisiana Franchise and other Louisiana corporation taxes for the years 1932 to 1943, inclusive."

First, we should consider the question of jurisdiction. We agree with the contention made by plaintiffs that if the state court, where this case arose, would be without jurisdiction of the counterclaim,

the case upon removal to the federal Court would not give the federal court jurisdiction, even though the federal court might have had jurisdiction, if the suit had originally been filed there. The authorities cited by us in the case of Abraham Land & Mineral Co. v. Marble Savings Bank, 35 F.Supp. 500, established long ago and quite definitely that all points relating to state jurisdiction and venue, as respects both subject matter and person, may be raised after removal of the case from the state court to the federal court.

We believe the above rule to be applicable and controlling without being influenced or changed by the provisions of Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Carter Oil Co. v. Wood, D.C., 30 F.Supp. 875; Arizona Lead Mines, Inc., v. Sullivan Mining Co., D.C., 3 F.R.D. 135. We should hold the same way, because the counterclaim filed in the federal court after removal could not be considered as an original suit, even though there be diversity of citizenship and an amount involving over $3,000.

Therefore, we are reduced to the question as to whether or not the counterclaim as filed by the Proctor Trust Company could have been filed in the state court from which this case was removed to us.

Article 375 of the Code of Practice of the State of Louisiana reads as follows:

"In order to entitle the defendant to institute a demand, in reconvention, it is required that such demand, though different from the main action, be, nevertheless, necessarily connected with and incidental to the same; as, for instance, the demand instituted by the possessor in good faith against him who sues in order to evict him or for the purpose of obtaining the payment of the improvements made on the premises; provided, that when the plaintiff resides out of the State, or in the State, but in a different parish from the defendant, said defendant may institute a demand in reconvention against him for any cause, although such demand be not necessarily connected with, or incidental to the main cause of action; and provided further, that in all cases of arrest, attachment, sequestration, provisional seizure and injunction, the defendant may in the same suit, by reconventional demand, recover from the plaintiff the damages he may have sustained by the illegal resort to such writ."

We believe this article, under the following phrasing, would permit the claim: "it is required that such demand, though different from the main action, be, nevertheless, necessarily connected with and incidental to the same." There is connection and incidence.

The next point, however, that we must determine is whether or not, granting the counterclaim may be filed in the state court under Code of Practice, Article 375, there was state jurisdiction of the counterclaim. The answer is found in Section 1 of Act No. 8 of the Third Extra Session of the Legislature of 1935, reading as follows:

"Be it enacted by the Legislature of Louisiana, That no foreign corporation doing business in this State shall be permitted to present any judicial demand before any court of this State, unless and until it has complied with the laws of this State for doing business herein, and unless and until it has paid all taxes, excises and licenses due to the State, provided that nothing in this act shall be construed to prevent the bringing of a cause of action against any such foreign corporation."

The validity of this law has been given definite and final support in R. J. Brown Co. v. Grosjean, Supervisor of Public Accounts, 189 La. 778, 180 So. 634, and, moreover, immediate appositeness of this law to the instant case has been shown in the companion case of Proctor Trust Co. v. Pope, La.App., 12 So.2d 724. But the point is made (and it is not insignificant) that the factual background in the instant case is substantially different from that in the Proctor Trust Co.-Pope case. In the Pope case, there was no franchise tax paid for any year, by the Proctor Company, and in our present case it qualified to do business in Louisiana and paid the 1943 franchise tax on May 20, 1943, and its counterclaim was filed later, on November 11th of the same year. It takes the full quotation on the point, with all its factual and legal relations, in 14a C.J. 1302, Corporations § 4007, in order to enable us to reach the proper conclusion:

"Where a contract made in a state by a foreign corporation is void, either by express provision of the statute or under the construction placed upon it by the courts in the particular jurisdiction, because of the failure of the corporation to comply with the statutory requirements before entering into the contract, subsequent compli-

ance with the statute will not enable the corporation to maintain an action thereon. Where a statute does not render void a contract made in a state by a foreign corporation before it has complied with the conditions imposed for doing business therein, but denies the right of a corporation to commence or maintain any action thereon in the courts of the state, whether compliance with the statutory requirements subsequent to the making of the contract will enable the corporation to enforce such contracts therein depends upon the terms of the statute properly construed. Some statutes by their terms merely suspend the right to enforce contracts made in the state until compliance has been made. Thus compliance with the statutory requirements subsequent to the making of a contract in the state has been held to enable a foreign corporation to maintain an action thereon in the courts of the state where the statute merely denied the right to enforce such contracts 'until' compliance; 'so long as' there was a failure to comply, 'unless it shall have complied,' 'unless it shall have first complied,' 'without first' complying, 'without' complying, while unregistered, or 'without alleging and proving' compliance. On the other hand, the right of a foreign corporation to maintain an action on a contract made by it in the state before compliance, by subsequently performing the conditions required, is sometimes expressly barred by the terms of the statute. Thus it has been held that compliance made subsequent to the making of a contract in a state will not enable a foreign corporation to maintain an action thereon where the statute provided that no action can be maintained 'unless at the time such contract was made' the corporation had complied with the statute, or where the statute provided that no action could be maintained 'unless prior to the making of such contract' it shall have made compliance. It has been held, however, that even though the statute provided that a noncomplying foreign corporation 'cannot make any contract in this state which can be enforced by it' subsequent compliance would remove the bar and enable a foreign corporation to enforce a contract made in the state before it had complied, where the intention of the legislature to permit recovery in such event appeared from other provisions of the statute. Some courts have taken the view that in the absence of any express provision indicating the legislative intent,

the penalty of nonenforceability of contracts is intended only to compel observance of the conditions imposed, and that therefore the right to enforce is merely suspended until compliance is made. *Other courts, however, in construing similar statutes have taken the contrary view, that compliance with the statute after the making of the contract will not remove the bar of the statute."* See also 20 C.J.S., Corporations § 1850. (Emphasis ours.)

Our Louisiana statute not only reads "unless and until it has complied with the laws of this State for doing business herein," but there immediately is added *"and unless and until it has paid all taxes,* excises and licenses due to the State." (Emphasis ours.) Accordingly, because of this added language, we should inquire what are the facts in this case on the point as to whether or not *"all* taxes * * * due to the State" have been paid. Only one annual franchise tax has been paid by the Proctor Trust Company and that was by the payment in May of 1943; the company has not paid the Louisiana franchise taxes for the years 1932–1942, both inclusive.

The Louisiana statute (No. 8, 3rd Ex. Sess. of 1935) is plain in its requirements in such a case as this. Where the foreign corporation bought Louisiana mortgage paper in the year 1925, then on March 15, 1932, it used the courts of Louisiana (via executiva, in a proceeding in rem) to foreclose against the property mortgaged, according to the tenor of the mortgage, which imported a confession of judgment, (facts in Milburn v. Proctor Trust Company, supra, 32 F.Supp. at page 637) the foreign corporation to present this judicial demand must have complied by payment of "all taxes, excises and licenses due to the State" for all of the years it has done business, or, *at least,* for the year of 1932 (year of filing suit) and for each year thereafter, until now.

Therefore, Act No. 8 of 1935 raised against the counterclaim, filed on November 11, 1943, so immediately after the belated qualification to do business in Louisiana on May 20, 1943, is a good objection to the jurisdiction of the state court of the counterclaim.

Equity, law and logic would require that the taxes to do business in Louisiana would have to be paid from the very time the privilege of doing business in Louisiana was enjoyed until and including the time that

the courts of Louisiana are used to enforce the contracts of the period that business was done in Louisiana.

Granting that Act No. 8 of 1935, 3rd Ex. Sess., should not be retroactive, still the taxes since the date of effectiveness of the act, 12 o'clock noon July 24, 1935 (Brown v. Grosjean case, 180 So. at page 635) until the present time are due and exigible, certainly.

■ The constitutionality of such so-called retaliatory statutes has been upheld and maintained for so long that the question is considered definitely settled (Philadelphia Fire Association v. New York, 119 U.S. 110, 7 S.Ct. 108, 30 L.Ed. 342) as to equal protection of the laws. Also these statutes have been upheld against the objection that they violate constitutional provisions against unequal taxation. Page 1269 of 14a C.J.; 37 Cyc. 748, Taxation.

We conclude, therefore, that the Proctor Trust Company has not complied with the provisions of Act No. 8 of the Third Extra Session of the Legislature of 1935.

Additionally, and pretermitting the above argument, we are strongly impressed with the reasoning for the rule that even a full compliance with the statute after the making of the contract would not remove the bar, as found in the case of Heileman Brewing Co. v. Peimeisl, 85 Minn. 121, 124, 88 N.W. 441, 442, in the following language:

"More than that, the construction of the statute urged on behalf of the plaintiff would invite and foster the very evil it was intended to prevent. It would enable foreign corporations to do business in this state in defiance of our laws until some party, perchance, pleaded its noncompliance in an action brought by it to enforce a demand against him. Then it would comply, and the action would proceed. Such a construction is contrary to the letter and spirit of the statute, and, if adopted by the court, would directly tend to defeat the public policy sought to be enforced by its enactment. The most efficient way to compel obedience to this statute is to enforce it as it reads, and not amend it by judicial construction so as to enable foreign corporations to avoid the consequences of a noncompliance with its terms by complying after the penalties have been incurred."

In Paragraph 22 of the answer of the Proctor Trust Company filed in this court, there is advanced the same cause of action as is contained (and repeated) in the formal and more detailed counterclaim filed later. The prayer of the answer embodies the subject matter of Article 22. This situation of the pleadings does not change our conclusion, for it is met by the same reasoning.

But to this view of the law, Proctor Trust Company replies that: (a) it did not initiate this litigation; (b) Section 1 of Act No. 8 of the Third Extra Session of the Legislature of 1935 ends with the following language: " * * * provided that nothing in this act shall be construed to prevent the bringing of a cause of action against any such foreign corporation"; and (c) consequently, when the plaintiffs initiated their action in the state court the act could not be used by them as a bar to the counterclaim of the defendant, the counterclaim being clearly permitted by Article 375 of the Louisiana Code of Practice.

■ We designate the counterclaim the equal of an original suit, and we classify the one urging the counterclaim as a plaintiff. We say further that this act is one based upon general public policy and this public policy may not be nullified by the pleadings of this case. Therefore, the initiation by these plaintiffs of their main suit cannot under the law become an implied waiver by them, as individuals, of the established law for the general good.

Judgment therefore will be signed upon presentation (a) dismissing the counterclaim of the Proctor Trust Company in this case for the want of jurisdiction and (b) further, in the exact duplicate of the judgment previously signed in No. 91, District Court, Western Division of Louisiana, Alexandia Division, Milburn v. Proctor Trust Company et al.