AYRES, Judge.
This is a petitory action in which plaintiffs assert ownership of an undivided Yz interest in a described 200-acre tract of land in DeSoto Parish. Defendants’ claims vary in character; some relate to the fee, others to mineral interests. From a judgment in favor of the two plaintiffs, recognizing each as the owner of an undivided Yz interest in the property, the defendants have appealed.
This case was heretofore before this court on appeal by plaintiffs from a judgment sustaining an exception of no cause of action and a plea to the jurisdiction of the court ratione materiae. That judgment was reversed and the case remanded for trial (151 So.2d 571).
For resolution are the same issues which were presented on the first appeal, which, however, must now be resolved upon the basis of the record of the trial of the case on its merits rather than upon an acceptance of the allegations of plaintiffs’ petition.
Plaintiffs and their father acquired title to the property herein involved in the proportions of an undivided Yz interest each as universal legatees under the last will and testament of one W. B. Roach. Defendants’ claims of title are based upon an acquisition under a warranty deed from plaintiffs’ father, acting for himself individually and purporting to act as tutor for plaintiffs.
As a basis for the present action, plaintiffs contend that the proceedings confirming their father as their natural tutor and authorizing the sale of their interests in the property are null and void absolutely. This contention is predicated upon the premise that at the time of their father’s purported appointment, they were nonresidents *467 of the State of Louisiana and, moreover, had no property in Caddo Parish, Louisiana. In this connection, it was asserted that their principal and sole estate in Louisiana consisted of their interests in the property presently involved, located, as aforesaid, in DeSoto Parish. Conversely, defendants assert the establishment of facts which would sustain a conclusion that the domicile of plaintiffs was in Caddo Parish at the time of the appointment of the tutor, and, moreover, that plaintiffs’ principal estate was located in Caddo Parish, or that they had interests to assert or to defend therein, and that, therefore, the district court of Caddo Parish had jurisdiction over the appointment of a tutor and of the proceedings authorizing the sale of the minors’ property.
Neither the tutorship proceedings nor the judgment authorizing the sale of the minors’ interests in the property have been directly attacked in any action in Caddo Parish or elsewhere. It is plaintiffs’ position that, inasmuch as the district court for Caddo Parish was without jurisdiction, ratione materiae, to appoint a tutor for them, or to authorize the sale of their property, the appointment of the tutor, as well as the proceedings and judgment authorizing the sale, and the sale itself, are absolute nullities which need not be asserted in a direct action; that such nullities may be interposed in a collateral proceeding at any time and at any place rights are asserted under such null and void proceedings.
The issues presented involve factual as well as legal questions. A résumé of the relevant facts is therefore deemed essential to an understanding of the issues as they are resolved.
Plaintiffs’ father and mother, Daniel Scott Hammond and Mrs. Kathleen S. Hammond, were married June 6, 1938, after which their matrimonial domicile was established in Caddo Parish, Louisiana, where plaintiffs were born — Patricia Scott Hammond, November 25, 1939, and William Daniel Hammond, April 16, 1941. Thereafter, the father and mother separated. The father acquired a residence in Texarkana, Arkansas. The mother continued to live in Caddo Parish, where, in an action instituted by her, she was, on April 25, 1942, granted a divorce from her husband and awarded the permanent care, custody, and control of their two minor children, plaintiffs herein. In 1946, Mrs. Hammond remarried and established a domicile for herself and children in Fort Smith, Arkansas, where they resided at the time of the purported appointment of Daniel Scott Hammond as tutor of the children.
The last will and testament of W. B. Roach, executed November 1, 1948, was, after his death, duly probated. Daniel Scott Hammond, under date of January 3, 1950, was appointed executor of the succession. As executor, Hammond administered the succession assets and sold such of the property as was located in Caddo Parish. From the proceeds of the sale, the debts and charges against the succession were paid and, under a judgment of May 10, 1950, plaintiffs and their father, as universal legatees, were placed in possession, in equal proportions, of the property left by the decedent, including the cash remaining with the executor after the administration of the estate, as well as the real estate situated in DeSoto Parish. The succession was thereby closed.
During the course of the administration of the succession, the proceedings reflect that Daniel Scott Hammond purportedly represented his minor children as natural tutor, whereas he was not appointed or authorized to act in that capacity until January 14, 1952.
The record reflects, however, that Hammond had, on November 4, 1950, sold the whole of the 200-acre tract in DeSoto Parish to one Bruce Cartwright, whose widow and heirs are made defendants herein, for a price of $3,500 cash. By another instrument dated December 18, 1951, Hammond is shown to have sold his undivided 14 interest in the property to Cartwright *468 for a price of $1,000 cash. Under a judgment of January 12, 1954, Hammond, as natural tutor of his minors, was authorized to sell their interests in the property for a consideration of $2,000, which authority he exercised in the execution of a deed dated January 16, 1954.
The record thus establishes that, at the time of the father’s purported appointment to the tutorship of his minors, and at the time he was purportedly authorized to sell their property, the minors were residents of and domiciled in the State of Arkansas; that, at that time, they owned no property in Caddo Parish; and that their principal and entire estate in Louisiana consisted of the property herein involved, situated, as heretofore pointed out, in DeSoto Parish. That the description of the property in Caddo Parish was inaccurately described for the want of a precise starting point is immaterial inasmuch as the succession proceedings, as well as the executor’s deed, clearly reflect the intention of the executor to sell and the purchaser to buy the assets of the succession located in that Parish.
Thus, the conclusion is inescapable that the provisions of Code of Practice Art. 307, with reference to the authority of the court of a minor’s domicile, where the minor resides in the state, to supply him with a tutor, are inapplicable to the facts, as are the provisions of the article, with reference to the jurisdiction of the court of a parish in which the minor’s principal estate is located, to make such an appointment, so far as the latter provisions concern the purported appointment made by the district court of Caddo Parish.
The' provisions of Code of Practice Art. 946, with reference to the authority of a court to appoint a tutor for a minor who, as well as his parents, resides out of the state, where the minor has interest to assert or defend, are insufficient to validate the appointment made in this instance inasmuch as plaintiffs had no valid interest to assert or defend in Caddo Parish. Nor, it may be observed, is it contended that the appointment of the tutor was to serve any such special purpose.
The provisions of Code of Practice Art. 945 concern a situation where the father and mother are dead, in which event an appointment of a tutor may be made by the court of their last place of domicile' — or, if they had no domicile, by the court of the domicile of the minor’s nearest relations. The facts as established in this instance, and to which we have already referred, render inappropriate the provisions of this article.
Nevertheless, defendants contend that the appointment of plaintiffs’ father as their tutor by the district court of Caddo Parish was valid for the reason that the decree awarding custody of the minors was not irrevocable but subj ect to such modification as changed conditions justified. Cited in support of this proposition are these authorities: Pullen v. Pullen, 161 La. 721, 109 So. 400 (1926); Newson v. Newson, 176 La. 694, 146 So. 472 (1933); Higginbotham v. Lofton, 183 La. 489, 164 So. 255 (1935).
We are in accord with the pronouncements made in these cases to the effect that a judgment awarding custody of a child is not irrevocable, and that the court awarding such custody retains jurisdiction to change the award when altered conditions demand its modification. However, these authorities have no application to the appointment of tutors.
The aforesaid conclusions, reached after a painstaking review and consideration of the entire record, lead to the further conclusion that the district court of Caddo Parish was without jurisdiction, ratione materiae, to appoint a tutor for plaintiffs or to order a sale of their property. Jurisdiction was with the district court of De-Soto Parish, where plaintiffs’ principal estate was located.
The situation here is controlled by the rule, well established in the jurisprudence, that a judgment rendered by a *469 court without jurisdiction is an absolute nullity and that such nullity may be invoked by anyone against whom and whenever it is asserted. Decuir v. Decuir, 105 La. 481, 29 So. 932 (1901); Buillard v. Davis, 185 La. 255, 169 So. 78 (1936); Key v. Salley, 218 La. 922, 51 So.2d 390 (1951); Tracy v. Dufrene, 240 La. 232, 121 So.2d 843 (1960); Mack Trucks, Inc. v. Dixon, 142 So.2d 605, La.App., 4th Cir. 1962. In Buillard v. Davis, supra, the court emphasized the rule when it stated:
“In the case of Decuir et al. v. Decuir et al., 105 La. 481, 29 So. 932, 934, we held that if a court ‘which rendered the judgment and ordered the sale upon which defendants herein rely, was without jurisdiction rations materiae to entertain the suit, the judgment and the sale predicated upon it are absolute nullities,—the judgment never existed as a judgment.’ [Emphasis supplied.] And in the opinion it is stated:
“ ‘If a judgment be an absolute nullity, this nullity may be invoked by any one against whom it is interposed, at any time and anywhere. * * * ’ (Italics ours.)”
Defendants, however, rely upon the principle that, where proceedings are carried on for the sale of minors’ property in the name of a tutor and they appear substantially regular and were conducted contradictorily with the undertutor, a decree of sale is a protection to the purchaser, and cite the case of Gandy v. Caldwell, 169 La. 870, 126 So. 221 (1930). But the order there complained of issued out of a court having jurisdiction, and the case is thus distinguished from the instant case. Moreover, as was stated in Key v. Salley, supra,
“Under the jurisprudence of this state, a purchaser at a judicial sale is held bound to inquire into the jurisdiction of the court granting the order of sale, ■* * * »
See the authorities therein cited and, also, Buillard v. Davis, supra; Webb v. Keller, 26 La.Ann. 596 (1874); Beale v. Walden, 11 Rob. 67 (1845); Levenson v. Chancellor, 68 So.2d 116, 124, La.App., Orleans 1953).
In James v. Meyer, 41 La.Ann. 1100, 7 So. 618, 619 (1890), the court, in stating the rule, made this appropriate observation:
“The doctrine is surely well established that a purchaser at a judicial sale need not look beyond the order of sale, as a rule; but the protection is extended only where the court had jurisdiction of the stibject-matter, and exercised povoers vested in it by law. * * * In such cases the purchaser is bound, at his risk and peril, to look behind the order of sale to ascertain whether the power exercised was one which could have been legally exercised.” (Emphasis supplied.)
See, also, Succession of Dumestre, 40 La.Ann. 571, 4 So. 328 (1888).
Sales of property belonging to minors, directed or authorized by courts, are judicial sales. LSA-C.C. Art. 1869; Levenson v. Chancellor, supra.
Cases cited by defendants are to the effect that the appointment of a tutor cannot be attacked collaterally, but only where the alleged irregularities do not involve the competency or jurisdiction of the court making the appointment. Similarly, the pronouncements in those cases were to the effect that a collateral attack is of no avail in a suit against third persons deraigning title from the vendee of a tutor who sells property at private sale under the order of a court of competent jurisdiction. The instant case is clearly not such a suit.
The defendants herein, with the exception of the heirs of the original purchaser, finally contend that they are innocent third parties who acquired their interests in the property on the faith of the public records, and that they are thereby fully protected under the law of registry. LSA- *470 R.S. 9:2721 et seq. Cited in support of this contention are the cases: Cole v. Richmond, 156 La. 262, 100 So. 419 (1924); Hasslocher v. Recknagel, 160 So.2d 421, La.App., 2d Cir. 1964 (writ refused). The statute is inappropriate to the situation presented here, for, as has already been pointed out, those relying upon the verity of a judicial sale, such as a sale of minors’ property, cannot be content merely with the existence of an order purporting to authorize its sale, but must also ascertain that the court issuing the process was a court of competent jurisdiction.
The cited cases are likewise inapplicable. The first of these involved the sale of minors’ property pursuant to a decree of a court of competent jurisdiction. None of the alleged irregularities in the proceedings involved extended to an attack upon the jurisdiction of the court. The second of these cases involved the application of the law of registry to conventional transactions entered into upon the faith of the public records.
The heirs of the purchaser of the property at the tutorship sale further contend that plaintiffs have no right to claim title to the property because the question of their liability as heirs of their father, Daniel Scott Hammond, their former tutor, now deceased, is in suspense. Thus, it is contended that, as his presumptive heirs, plaintiffs would become responsible for their father’s obligations, including his obligation of warranty in connection with the sale now under attack, on their acceptance of his succession. Therefore, if it be assumed that plaintiffs will accept the succession of their father, it is asserted that they would be claiming the invalidity of a deed for which they themselves would be ultimately responsible. It is therefore urged that the judgment appealed be set aside and the cause remanded for a determination of plaintiffs’ liability for the acts of their father while serving as their natural tutor in executing the deed on their behalf.
In this regard, it may be appropriate to observe that it is not contended that plaintiffs have received any portion of the alleged purchase price of the property, nor that it has inured to their benefit. To the contrary, it clearly appears, from the record, that they have not received any part of the consideration purportedly paid, nor has it inured to their benefit.
Of the many reasons why this position of these defendants is untenable, we may point out that it would be a matter of pure conjecture as to whether plaintiffs would, in the future, accept their father’s succession and become responsible for his obligations, if, indeed, it should be established that he left an estate at his decease.
Moreover, when an action is brought to recover property of minors which has been illegally sold, the minors cannot be charged with the proceeds of such sale for to allow this would be to> permit tutors to incur for the minors obligations without observing the forms of laws, made for their protection. Gremillion v. Roy, 125 La. 524, 51 So. 576 (1910).
Therefore, for the reasons assigned,
It is Ordered, Adjudged, and Decreed that the judgment appealed be, and it is hereby, affirmed, and that, accordingly,, there be judgment herein in favor of plaintiffs Patricia Scott Hammond and William' Daniel Hammond, and against the defendants: George Travis Gibbs, Jr., individrtally and as dative testamentary executor of the estate of George Travis Gibbs, Sr., deceased; William Currie Gibbs; Leonard Stanley Gibbs; Sallie Ann Gibbs Roach; John Malcolm Hay; Frank W. Scheller; Joe T. Gawthorn; Joe E. Moran; Mrs. Susie Lou Hunter Cartwright, individually and as tutrix of Bruce Cartwright, Jr., Frankie Cartwright, Susan Cartwright, and' Roy Cartwright; C. L. Paris; C. Charles Perrenod; and the estate and succession of Daniel Scott Hammond, deceased; as well as against all other defendants, whether named herein or not, recognizing plaintiffs- *471 Patricia Scott Hammond and William Daniel Hammond to be the true and lawful owners, in equal proportions, of an undivided % interest in and to the following-described property, to wit: Ni^ of SWj4> SW14 of SWJ4, and of SE14, Sec. 7, T. 15 N., R 13 W., Louisiana meridian, DeSoto Parish, Louisiana, and, as such, entitled to the full, complete, and undisturbed possession thereof, which possession the defendants are directed and ordered to deliver unto plaintiffs.
It is further Ordered, Adjudged, and Decreed that all motions and exceptions not heretofore overruled be, and the same are, now overruled; and
It is further Ordered, Adjudged, and Decreed that the rights of all parties defendant, under their respective calls in warranty and claims for damages be, and they are hereby, specially reserved to them; and that, as thus recast, the judgment appealed is affirmed at defendants-appellants’ cost.
Affirmed.