440 So.2d 899 (1983)
SUCCESSION OF Alonzo LEWIS.
No. 15,705-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
Writ Denied January 6, 1984.
*902 Touchstone & Wilson by David M. Touchstone, Shreveport, for plaintiff-appellee.
Nelson & Achee by Harry R. Nelson, Shreveport, for defendant-appellant.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
A class of heirs appeals a judgment rejecting its demands to nullify a court authorized sale of succession property and to declare the administration of the succession to be null and void. We affirm.
Alonzo Lewis died intestate at his domicile in Caddo Parish on December 28, 1952, without ascendants or descendants but survived by his widow and numerous collateral heirs. At the time of Lewis' death, his succession consisted primarily of a 50.709 acre tract of land situated in Caddo Parish which he had inherited from his parents and on which he and his wife had resided until his death. His wife continued to reside on the property until sometime prior to her death in 1976. No judicial proceedings were instituted in connection with this succession until June 24, 1981, when Rose Simmons Thompson, Claudell Washington and Cleveland Washington, all descendants of three of the deceased's sisters, petitioned the court to have Mrs. Thompson appointed administratrix of the succession. Mrs. Thompson was duly qualified on June 24, 1981, without opposition. Prior to her qualification as administratrix, Mrs. Thompson entered into a contract with Touchstone and Wilson, attorneys at law, to represent the executrix and an agreement with Johnson Realty to sell the immovable property. After her qualification, a formal listing agreement was signed with Johnson Realty. On December 24, 1981, Mrs. Thompson signed a sales agreement with William N. Parker, representative of Consolidated Well Servicing, Inc. for sale of the property at a price of $1900 per acre. On February 11, 1982, she petitioned the court for authority to sell the tract of land at the agreed upon price at private sale. Contained within the original petition for private sale was a prayer that the listing agreement and the sales agreement be ratified by the court. By ex parte order, the sale was ordered advertised and the earlier acts of the administratrix were ratified. On March 16, 1982, the court homologated the petition for private sale and an act of sale was passed on April 19, 1982, all without opposition. The consideration for the sale was a cash down payment of $14,820 with the balance being due in five annual installments bearing interest at the rate of 11% per annum. No appeal was taken from the judgment homologating the petition for private sale.
On August 13, 1982, the administratrix filed a rule for the purpose of taking evidence regarding the heirship of the descendants of Alonzo Lewis ordering certain of the heirs to show cause whether or not they had an interest in the succession.
Thereafter on August 18, 1982, the twenty eight heirs filed a rule in the form of a class action for all of the heirs under La.C. C.P. Art. 591 asserting that there was no need for an administration in this succession and that the private sale of the property should be declared to be a nullity. In addition to the administratrix, Consolidated Well Servicing, Inc., as initial purchaser of the property and Falcon Land Development Corporation, as the subsequent purchaser of the land from Consolidated were made defendants in rule.
*903 After considering the evidence presented at the rule, the trial court rejected all of the demands of the class of heirs and the class appeals without assigning errors. After reading the brief of the appellant, it appears that the following issues are raised in this appeal by the class:
(1) Whether or not an administration of this succession was necessary?
(2) Whether or not the failure to appoint an attorney for the absent heirs renders the sale of the property null?
(3) Whether or not the sale was lesionary?
(4) Whether or not the administratrix acted without authority in executing the listing agreement, employing the attorney and surveyor and the legal effect of these actions?
(5) Whether or not the sale of the property was no more than an attempt to partition the property and if so, whether it should come under the articles governing partition?
In connection with the initial argument advanced on behalf of the class, it appears the contention is that because Lewis died in 1952, no judicial proceedings were necessary in connection with his succession because it was opened at the time of death and closed by the acceptance of the heirs evidenced by their acts of possession in the form of the sale of timber and the execution of oil, gas and mineral leases on the property. Thus, it is argued that no open succession existed to permit the qualification of the administratrix and her qualification should be annulled because all of the heirs could and did become vested with ownership of the property without need for an administration or judgment of possession prior to the institution of these judicial proceedings.
It is unnecessary that we address the correctness of this interpretation of the applicable law at the time of the decedent's death because it is clear and well settled that the law has always been that all of the heirs must have unequivocally and unconditionally accepted the succession to have avoided an administration. See Succession of Sharbino v. Administration, 285 So.2d 545 (La.App.3d Cir.1973); 24 La.L.Rev. 319; Official Comments to La.C.C.P. Art. 3001. The trial court made an express finding that all of the heirs had not accepted the succession unconditionally. This is a finding of fact which is not manifestly erroneous based upon the evidence presented to it. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Therefore, the succession of the deceased exists as a separate, distinct legal entity from the date of death until it is terminated by proceedings had pursuant to an administration or its unqualified acceptance by all of the heirs. See Danos v. Waterford Oil Co., 225 So.2d 708 (La.App. 1st Cir.1969).
At the time that this judicial proceeding was initiated, the Louisiana Code of Civil Procedure was in effect. This code is remedial legislation which is applied retrospectively. Orleans Parish School Board v. Manson, 241 La. 1029, 132 So.2d 885 (1961). In fact, the legislation under which it was enacted specifically provides:
Section 4. (A) This act is hereby declared to be remedial legislation.
(B) The provisions of the Louisiana Code of Civil Procedure enacted by Section 1 hereof, so far as applicable, shall govern and regulate the procedure in all civil actions and proceedings:
(1) Instituted on or after the effective date of this act; and
(2) Pending on the effective date of this act ...
Therefore, the Louisiana Code of Civil Procedure, particularly Articles 2811 et seq, is applicable to the proceedings before the court and it was necessary that judicial proceedings be instituted in order that the succession be properly terminated.
The question as to whether a succession should be placed under administration is, to a considerable extent, within the sound discretion of the trial judge. Succession of Perot, 223 La. 412, 65 So.2d 895 (1953). The appointment was regularly made by a competent court, no opposition was made to it, and the estate had been partially administrated at the time of the *904 attack. More than a year had passed from the date of the qualification of the administratrix until the institution of these proceedings. Such delayed attacks are viewed with disfavor. Succession of Perot, supra. Under the provisions of La.C.C.P. Art. 3001[1], it is clear that an administration was properly invoked in this case.
The class finally argues that the proceedings in qualifying the administratrix were invalid because no attorney was appointed to represent the absentee heirs under La.C.C.P. Art. 3171. The fact that no attorney was appointed to represent the absentee heirs does not, of itself, affect the validity of the administratrix's appointment. Succession of Perot, supra.
Therefore, the trial court was not in error in refusing to annul the administration of this succession. The class further argues that the proceedings in connection with the sale of the land were invalid because no attorney was appointed to represent absentee heirs under the provisions of La.C.C.P. Art. 3171 which provides:
If it appears from the record, or is otherwise proved by an interested party, that an heir of an intestate, or a legatee or presumptive legal heir of a deceased testator, is an absentee, and there is a necessity for such appointment, the court shall appoint an attorney at law to represent the absent heir or legatee.
This article stresses and only authorizes the appointment of an attorney for absent heirs when there appears to be a necessity therefor; this provision is in keeping with the jurisprudence prior to the Code which held that such an appointment was essential only when the necessity therefor was shown during the course of a pending administration of a succession. See Succession of Kellogg, 51 La.Ann. 1304, 26 So. 262 (1899).
In Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173 (La.1973), the court held that the designation of an attorney for an absentee is not an arbitrary requirement of law but one that is dependent upon the circumstances of each case. The appointment only becomes essential in a case where the necessity is shown during a pending administration of a succession. Notwithstanding the failure to appoint an attorney for absent heirs, the appointment of an attorney is merely directory, and the failure to appoint one is, at most, only a relative nullity.
Even if the face of the record reflected a necessity for the court to appoint an attorney for the absent heirs in connection with the sale, we conclude that the trial court was not in error in refusing to set aside this sale because of this irregularity. Generally, in the absence of fraud or ill practice by the purchaser, a private sale by an order of court in a succession proceeding will not be disturbed. Such a purchaser does not have to look behind the judicial order commanding the sale to determine the truth of the facts upon which the court has acted but need only be satisfied that the court has jurisdiction. Pete v. Estate of Pete, 253 So.2d 650 (La.App.3d Cir.1971). The order to sell protects a bona fide purchaser from any irregularities contained in the proceeding. Sterling v. C. Marshall Martin, Inc., 409 So.2d 1231 (La. App. 1st Cir.1982). Compare Hammond v. Gibbs, 176 So.2d 465 (La.App. 2d Cir.1965). In this proceeding, the court authorizing the sale was a court of proper jurisdiction. Therefore, it follows that unless the irregularity *905 or ill practice complained of is in some manner attributable to the purchaser or is an absolute nullity, this private sale of property by order of court should not be disturbed. La.C.C.P. Art. 2004 provides that a judgment obtained by fraud or ill practices may be annulled. The criteria set forth for annulling a judgment under this article are explained in Johnson v. Jones-Journet, 320 So.2d 533 (La.1975):
[H]owever; the jurisprudence set forth two criteria to determine whether a judgment had, in fact, been obtained by actionable fraud or ill practices: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) the enforcement of the judgment would have been unconscionable and inequitable. [Footnote omitted.]
The trial court is permitted discretion in deciding when a judgment will be annulled because of fraud or ill practice. Kem Search Inc. v. Sheffield, 434 So.2d 1067 (La.1983) states:
[S]everal of the most important reasons for deferring to the trial judge's exercise of discretion are: His observation of the witness, his superior opportunity to get "the feel of the case," (Citation omitted.) and the impracticability of framing a rule of decision where many disparate factors must be weighed (Citation omitted.). On occasion, when a problem arises in a context so new and unsettled that the rule-makers do not yet know what factors should shape the result, the case may be a good one to leave to the lower court discretion. [Emphasis added.]
Such a rule of law is particularly applicable to the instant case. It is well settled that reviewing courts will defer to the trial judge's reasonable discretion when his decision is based on a correct application or interpretation of the law. See Kem Search, Inc. v. Sheffield, supra. We conclude that the trial court did not abuse its discretion in finding that the sale or the judgment on which it was based should not be set aside for fraud, ill practice or irregularity. Our review of the record reveals no evidence which could remotely be related to any fraud, bad faith or ill practice on the part of the purchaser. Furthermore, there has been no showing made that the heirs have been deprived of any legal right which would render the enforcement of the judgment and the resulting sale unconscionable and inequitable. We have carefully reviewed this record and have found that there are in excess of sixty heirs to this property. Of these heirs, twenty-eight have brought this action on behalf of all of them. At the hearing, there was no evidence presented from any heir who was an absentee at the time the sale was ordered and consummated and who would have been entitled to the appointment of an attorney that he or she did not want the property sold, or would have opposed the sale or had no actual notice that the property would be sold. Furthermore, the trial court found the price obtained to be fair.
A different result would attach if it was found that the sale price obtained for the property had been unfair or inadequate because this would remove the case from the ambit of La.C.C.P. Art. 2004 and place it in the category of absolute nullity. If property has been sold for a woefully inadequate consideration, then the sale would be absolutely null. Actual value is the value at which the property could reasonably be expected to sell at the time. Middle Tennessee Council, Inc. v. Ford, supra. Value is a question of fact. The trial judge found that the price received for the property was a fair valuation. Such findings are best left to the discretion of the trial judge, particularly when the opinions of experts are involved, because these are matters which the trial judge is in a particularly advantageous position to determine since it is, in effect, a question of credibility. See Middle Tennessee Council, Inc. v. Ford, supra. The only evidence presented to the court established that a fair price was paid for the property under the circumstances of this sale. The class presented no credible evidence to prove that the price obtained was less than the actual value of the property.
*906 The Class next argues that the sale is defective because there was no current valuation of the property for the court to review prior to the sale. There is no legal requirement that an administrator or administratrix provide the court with a current appraisal for sale of succession property under La.C.C.P. Art. 3281. The requirements of Article 3281 were complied with and the trial court was obviously convinced that the price obtained was a fair one. This argument is without merit.
The Class next argues that the sale was lesionary. Since we have previously arrived at the conclusion that the sale price was fair and represented the actual value of the property, there can be no issue of lesion. Thus, the alternative demands based on claims of lesion are without substance. See Middle Tennessee Council, Inc. v. Ford, supra.
The next basis on which the class seeks to set aside the sale is the invalidity of the agreements entered into by the administratrix with the attorney, the surveyor, and the realtor because the contracts were not approved by the court contending that the administratrix must acquire prior authorization from the court in accordance with law. This contention is more properly addressed in an opposition at the time that the administratrix attempts to homologate the Tableau of Distribution. Accordingly, we pretermit any discussion of the merits of this argument, other than to hold that it does not form a sufficient basis to nullify the sale.
Finally, the class argues that the attorney and the administratrix have acknowledged from the beginning that it was their intention to sell the property thereby contending that the procedures pertaining to partition should have been followed. See La.C.C.P. Arts. 4601 et seq. This argument is equally without merit. It is clear that under La.C.C.P. Art. 3261 that a sale of succession of property may be for any purpose. See also Succession of Voland, 296 So.2d 406 (La.App. 4th Cir.1974); Succession of Pipitone, 204 La. 391, 15 So.2d 801 (1943).
For the foregoing reasons, the judgment appealed from is affirmed at the cost of appellant.
JUDGMENT AFFIRMED.
NOTES
[1] La.C.C.P. Art. 3001 provides:

The heirs of an intestate shall be recognized by the court, and sent into possession of his property without an administration of the succession, on their ex parte petition, when all of the heirs are competent and accept the succession unconditionally, and the succession is relatively free of debt. A succession shall be deemed relatively free of debt when its only debts are succession charges, mortgages not in arrears, and debts which are small in comparison with the assets of the succession.
The surviving spouse in community of an intestate shall be recognized by the court on ex parte petition as entitled to the possession of an undivided half of the community, and of the other undivided half to the extent that he has the usufruct thereof, without an administration of the succession, when the succession is relatively free of debt, as provided above.