490 So.2d 538 (1986)
SUCCESSION OF Georgina Blestel TAGLIALAVORE.
No. CA-4654.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1986.
Writ Granted October 3, 1986.
*540 Henry Tutt Dart, New Orleans, for Alphonse L. Taglialavore, Jr., appellant.
Tillery & Tillery, Allen J. Tillery, Chalmette, for Gene J. Taglialavore and Jill J. Taglialavore, appellees.
Before REDMANN, C.J., and WILLIAMS and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Appellant, Alphonse Taglialavore, is appealing judgments of the trial court dismissing his Opposition to Petition for Authority to Sell Immovable Property and dismissing his rules and oppositions to certain actions taken by the co-executors, the appellees herein. He is further appealing the trial court's Judgment of Homologation of Application to Sell Property at a Private Sale. Each of the aforementioned judgments was rendered in connection with the succession of Georgina Blestel Taglialavore, the mother of the parties herein.
The record reflects that the decedent died on March 27, 1982 leaving a will which named Gene and Jill Taglialavore as testamentary co-executors. On April 20, 1982, they were confirmed as co-executors and letters testamentary were issued to them.
The first issue concerns Gene's alleged offer to buy the heirs' undivided one-half interest in a piece of commercial property which he leases and occupies for his meat business. Appellant argues that 1) the record does not support the claim that Gene offered to buy the property 2) the appellees did not prove the necessity of the sale, 3) the property is worth more than the $60,000 Gene allegedly offered to pay and 4) the petition for authority to sell the property did not comply with the formal requisites of the law. The first two of these assertions are factual determinations based upon witness credibility. Such determinations are within the province of the trier of fact and, unless clearly erroneous, will not be disturbed on appeal. Tebbe v. Avegno, 435 So.2d 513 (La.App. 4th Cir. 1983).
It is clear that sale of succession property may be made for any purpose, including partition of succession property. C.C.P. art. 3261; Succession of Lewis, 440 So.2d 899 (La.App. 2nd Cir.1983); Succession of Voland, 296 So.2d 406 (La.App. 4th Cir.1974). A succession representative has a legal and fiduciary obligation to secure the best price reasonably available as consideration for the conveyance of the succession property. C.C.P. art. 3191; Succession of Lawson, 408 So.2d 992 (La.App. 2nd Cir.1981). Actual value of a piece of property is the value at which the property could reasonably be expected to sell at the time of the proposed sale. Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173 (La.1973). However, value is a question of fact which is best left to the discretion of the trial judge, particularly when opinions of experts are involved. This is a matter in which the trial judge is in a particularly advantageous position to determine since it is, in effect, a question of credibility. Succession of Lewis, supra, at 905. Moreover, the approval of an application to sell succession property at a private sale rests within the sound discretion of the trial court, provided of course, that there are good reasons for the sale and the sale is in the best interest of the succession. Succession of Shepherd, 454 So.2d 1265 (La. App. 2nd Cir.1984).
As for appellant's first three contentions, Gene did say he wanted the undivided property for $60,000. The appellees testified that they wanted to wrap-up the succession by dispersing or selling all of the property. Two appraisers testified as to the approximate value of the property and agreed that the $60,000.00 offered for the one-half interest was a fair price considering that the probability of an outside sale of such encumbered property was remote. We note that the appellant's objections were not to a proposed sale of the property *541 itself, but were rather objections to the sale of the property to his brother and to the proposed selling price.
We find that adequate justification for the sale of the property was presented, and that the appellant failed to prove that the sale would not be in the best interest of the succession.
With regard to appellant's fourth contention that the Petition for Authority To Sell Immovable Property filed by the co-executors on September 18, 1984, did not comply with LSA-C.C.P. art. 3281, we disagree.
LSA-C.C.P. art. 3281 reads in part as follows:
A. A succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of and the reasons for the proposed sale. If an agreement to sell has been executed in accordance with Paragraph B of this Article, a copy of such agreement shall be annexed to the petition.
B. A succession representative may execute, without prior court authority, an agreement to sell succession property at private sale, subject to the suspensive condition that the court approve the proposed sale.
A review of the disputed petition reveals that the property to be sold is described in great detail. The petition likewise states that:
... Gene J. Taglialavore has made an offer to purchase the undivided one-half (½) interest in and to the above described property owned by this succession for the price of SIXTY THOUSAND and no/100 ($60,000.00) Dollars, Cash. That the co-executors of this Succession believe that this is a fair and equitable price and that it is the best interest of this succession to sell its interest in the above described property to Gene J. Taglialavore for the price herein set forth."
The petition also makes clear that the succession owns only a partial interest in the property as a whole and that Gene J. Taglialavore, who already owns a one-tenth (1/10) interest in the property, occupies the property as a lessee and operates a business at the location. Testimony at the trial on the rule revealed that a formal written agreement to sell was never executed due to the continued objections of Alphonse L. Taglialavore and therefore could not be attached to the petition. Thus we find that the contents of the petition adequately comply with the requirements set forth in LSA-C. C.P. art. 3281.
Therefore the trial court's judgments dismissing of appellant's opposition to the petition for authority to sell immovable property and dismissing appellant's opposition to the homologation of the application to sell the property at a private sale are affirmed.
Appellant next argues that the descriptive list of assets was incomplete as it failed to include certain items of movable property: a diamond engagement ring, a diamond watch, a silver flatware service for twelve, an electric organ and a piano. At trial, the co-executors testified that each piece of disputed property was not part of the succession as decedent had prior to her death given the property to some of her children. Appellant argues that when there is a doubt as to ownership of the property, it should be included in the succession. This is a matter for the trier of fact.
The trial court found that these items did not constitute part of the decedent's personal or household effects and since no evidence was presented that the donated property might be claimed by the succession, we find no error in the dismissal of the appellant's Rule To Traverse Descriptive List of Assets. Succession of Danese, 459 So.2d 725 (La.App. 4th Cir. 1984); Succession of Amos, 422 So.2d 605 (La.App. 3rd Cir.1982).
Appellant attacks the tableau of distribution on three grounds, to-wit: attorney's fees were not limited to 5% of the gross estate, one of the debts of the succession was actually a personal debt of one of the co-executors and the co-executors lacked *542 proper authority to pay debts of the succession. With respect to the attorney's fees there appears to be a stipulation that before any fee would be paid to the present attorney for the succession, the amount would be submitted to the court for approval. Thus, this issue is moot.
As for the debt allegedly personal to Jill Taglialavore, the record contains a letter from the Social Security Administration seeking reimbursement from the succession for overpayments made to Jill from her father's social security account. Appellee apparently (there is nothing in the record about this) was working and receiving social security benefits in order to pay her way through school. Appellant argues that the payments, $4,121.30, are Jill's personal debt and not the debt of the succession. We agree.
The Social Security System is a form of social insurance whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and to their dependents. Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). The payment of social security benefits are authorized by federal statute and flow from federal policy which is unrelated to state or local laws on marriage or inheritance. Davis v. Richardson, 342 F.Supp. 588 (D.Conn.1972). Old Age, Survivors, and Disability Insurance (OASDI) student benefits are paid to the children of an insured worker when the worker retires, becomes disabled, or dies. The benefits are paid directly to the student recipient as a beneficiary and are intended to help defray the expenses of those students attending educational institutions on a full-time basis. Miller v. Richardson, 320 F.Supp. 313 (S.D.W.Va.1970).
Although the OASDI benefits of Jill's father may have accrued as a result of social security taxes paid upon community resources, payments by the Social Security Administration paid directly to Jill Taglialavore as beneficiary of her father's Old Age, Survivors, and Disability Insurance represented neither a debt nor an asset of her mother's succession, nor did the overpayment of such funds represent a debt of the former community of her parents. We find that the $4,121.30 payment to the Social Security Administration was improperly charged to the succession of Mrs. Taglialavore. Therefore the judgment of the trial court dismissing appellant's opposition to the Tableau of Distribution and dismissing appellant's petition seeking nullification of the homologation of Tableau of Distribution are reversed and remanded to the trial court for further proceedings in accord with this judgment.
Appellant also claims that the co-executors lacked the proper authority to pay debts of the succession as no petition was filed along with the Tableau of Distribution in accordance with LSA-C.Civ.P. art. 3303[1] and there was no reference to a petition in the advertisement made in connection with the tableau of distribution. C.Civ.P. art. 3304.[2] We do not agree.
The essence of LSA-C.Civ.P. art. 3303 is to provide the court with a listing of the debts and charges of the succession which the succession representative desires *543 to be paid. This is accomplished by including in or annexing a tableau of distribution itemizing those charges. These charges and debts were duly presented to the court in the Tableau of Distribution filed on November 18, 1983. Notice of the filing of the tableau of distribution was published in the St. Bernard Voice on November 18, 1983. The court approved and homologated the tableau of distribution on December 8, 1983. The appellant has failed to demonstrate how the lack of a separate petition for authority to pay debts in any way prejudiced his interests. We find that the co-executors adequately complied with LSA-C.Civ.P. arts. 3303 and 3304.
Finally, appellant opposes the first and second annual accounts on the grounds that not all of the disbursements have been substantiated and that they exceeded the amounts for which appellees had received authority to disburse. This argument lacks merit. Appellant offered no evidence tending to show that any of the payments were in any way improper.
In summary, the trial court's judgment dismissing the appellant's opposition to the co-executors' petition for authority to sell the immovable property and the judgment homologating the co-executors' application to sell the property at a private sale are affirmed. The judgment dismissing the rule to traverse the Descriptive List of Assets, and the opposition to the First Annual Account, are likewise affirmed. The judgments dismissing the appellant's opposition to the Tableau of Distribution, the petition seeking nullification of the homologation of the same, the opposition to the Second Annual Account and the opposition to the judgment of homologation of the Second Annual Account are reversed and remanded for further proceedings in accord with the reasons set forth above.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
REDMANN, C.J., dissents in part.
REDMANN, Chief Judge, dissenting in part.
I dissent not from the reversal in part of the judgment appealed from but from the affirmation of the part authorizing the proposed succession sale. Because my dissent is not from a reversal or modification, La. Const. art. 5 § 8(B) does not require that we resubmit this matter to a panel of five judges.

I
Opponent complains that the first annual account credits the executors with both a $2,000 estimated estate tax and a $2,000 reimbursement to co-executrix Jill Taglialavore for paying that estimate. That error was remedied by a refund of $2,192.45 reported in the second annual account. Other complaints of lack of proof of unchallenged items are insubstantial. Opponent may be correct about certain other procedural defects, but does not show that they have caused him any injury requiring remedy.

II
The social security overpayment claim against co-executrix Jill Taglialavore resulted from her earning enough money to make her ineligible for the student benefits. The claim is against her alone, and not her mother, although there is a certain attractiveness to her argument that the overpayment discharged an obligation that the mother would have discharged. The mother's succession should repay the overpayment, the daughter argues, because her mother would have paid her educational costs (as her parents did for her siblings?) and did not do so because the daughter was receiving the social security payments; and to the extent that those payments have been charged back she should be allowed to charge them back to her mother's estate as the equivalent of the educational support her mother would have given her. That is comparable to arguing that her siblings should collate the educational expenses they received by taking less, thus allowing her to take morean argument that is not only inexact as an accounting matter but also expressly rejected by La.C.C. 1244's *544 denial of collation of educational expenses. I agree that the $4,121.30 repaid to the social security administration is not chargeable to the mother's succession.

III
The private sale of succession property to co-executor Gene Taglialavore should be disallowed. A court should not authorize a succession sale of a parent's undivided half of a formerly community immovable, when the sale is not necessary to pay debts or legacies, and when the other parent's undivided half has already descended to their five children and one of those children opposes the sale. All that such a sale does is to alter the five heirs' ownership from two tenths each to one tenth each for four heirs and six tenths for the fifth heir, without obtaining the opposing heir's consent to the price.
Succession of Lewis, 440 So.2d 899 (La. App. 2 Cir.1983), cert. denied 443 So.2d 1119, declares that La.C.C.P. 3261's allowance of a sale "for any purpose" authorizes a sale merely to accomplish a partition. In Lewis, however, the succession sale to accomplish partition was of separate property owned in its entirety by the decedent (and, incidentally, the sale was not made to a co-executor nor to a co-heir). In our case, the sale of the second parent's half cannot accomplish a partition, because the heirs already own a tenth each of their parents' former community property.
The sale of a succession's undivided half of property whose other half is already co-owned by the heirs thus cannot do the good of accomplishing partition. But it can do harm: an undivided half of an immovable will ordinarily not bring a price equal to half of the price of the whole.
That is one of opponent's substantial objections here: the price is too low. One does not overcome but concedes the correctness of that objection by saying, as one expert witness did ("Possibly an individual would be reluctant to buy half interest because he wouldn't have control of it"), that the market value is lower than half of the market value of the whole because only an undivided interest is being sold.
Underscoring the pointlessness of this succession sale of half (except as a device to transfer opponent's interest in that half to his co-executor brother) is that, whether or not it is approved, a partition sale of the whole property remains an option available to opponent, who will presumably demand it in any event. Any co-owner may demand partition, and opponent will remain a co-owner of the tenth interest inherited from his father notwithstanding that the proposed sale would prevent his inheriting any interest from his mother.
The proposed succession sale followed by a partition sale of the property in its entirety would bring opponent one fifth of the disproportionately lower market value of an undivided half (thus less than one tenth of the higher market value of the whole) plus one tenth of the market value of the whole. If the succession sale of half were disapproved, a partition sale of the property as a whole at market would bring opponent two tenths of the full market value of the whole. If, as the experts testified, the property has a market value as a whole of $130,000 (or more), then sale of the whole would bring opponent $26,000 for his two tenths. But if this sale of his mother's undivided half for only $60,000 goes through, plaintiff gets only $12,000 for the tenth inherited from his mother, plus $13,000 for the tenth he already owns, a total of only $25,000.
La.C.C.P. 3261 authorizes a sale "to pay debts and legacies, or for any other purpose, when authorized by the court as provided in this Chapter." The implied condition of any authorization by the court is that expressed in C.C.P. 3286: the court shall authorize a listing agreement for sale of an immovable "when it considers such agreement to be in the best interests of the succession." This succession sale is not necessary to pay debts or legacies, and it is not capable of accomplishing a partition. Its only purpose is to transfer the other heirs' interests, over the objection of one of them, to their coheir, at a price that the *545 evidence proves is lower than that which would result from a partition sale of the property as a whole. That purpose is not "in the best interests of the succession" and the trial judge's authorization of this sale should therefore be reversed.
NOTES
[1] Art. 3303. Petition on for authority; tableau of distribution

When a succession representative desires to pay charges or debts of the succession, he shall file a petition for authority and shall include in or annex to the petition a tableau of distribution listing those charges and debts to be paid.
If the funds in his hands are insufficient to pay all the charges and debts in full, the tableau of distribution shall show the total funds available and shall list the proposed payments according to the rank of the privileges and mortgages of the creditors.
Source: C.C. Arts. 1063, 1180, 1181.
[2] Art. 3304. Notice of filing of petition; publication

Notice of the filing of a petition for authority to pay debts and charges shall be published once in the parish where the succession proceeding is pending in the manner provided by law. The notice shall state that the petition can be homologated after the expiration of seven days from the date of publication and that any opposition to the petition must be filed prior to homologation.
Amended by Acts 1980, No. 280, § 1.