|, CARAWAY, J.
In this case, plaintiffs/legatees claim a two-thirds interest in immovable property which was the subject of a court-authorized exchange during the administration of a succession. The succession is now closed, and the defendant is a third-party purchaser of the property. The trial court dismissed plaintiffs’ action for the nullity of the transfer of the succession property on the exceptions of res judicata and no right of action'. We now reverse these rulings and remand the case for the proper joinder of all heirs or legatees of the closed succession under La. C.C.P. art. 641, et seq.

Procedural History

Although labeled a petitory action, this suit essentially seeks to nullify the transfer of property and certain orders or judgments authorizing the transfer rendered in the Succession of Nora Taylor Lawrence (hereinafter the “Succession”). The disputed succession proceedings purported to authorize the transfer of immovable property of the estate during the administration of the Succession. Through subsequent conveyances, a portion of the property (hereinafter the “Disputed Property”) *269 was acquired by Tri-State Sand & Gravel, Inc. (“Tri-State”).[1] The plaintiffs, Mary Lawrence Laudermilk Lanham (“Lan-ham”) and Margaret Ann Lawrence Crawford (“Crawford”), are the decedent’s daughter and granddaughter, respectively. They claim an undivided two-thirds interest in the Disputed Property as a result of the nullity of the transfer of the succession property and the resulting violation of their inheritance rights as the beneficiaries of two testamentary trusts (hereinafter the “Trusts”).
| ¡.The succession proceedings commenced in August 1986 following Mrs. Lawrence’s death on August 17. Under the will, the residual legatees were William Paul Lawrence, II (“Paul”) (l/9th), Mary Jane Lawrence Lane (“Lane”) (l/9th), Rebecca Lawrence Stenzel (“Stenzel”) (l/9th) and the two testamentary Trusts (l/3rd to each trust). The terms of the Trusts were listed as five years from the date'of death of Mrs. Lawrence. Paul, the decedent’s grandson, Was named in the will as the executor and the trustee for the Trusts. Although letters testamentary were issued to Paul as executor in August 1986, written acceptances as trustee of the Trusts were never executed by him.
In September 1987, a pleading entitled “Petition for Authority to Execute Partnership Agreement and to Exchange Succession Property for Units of Partnership Interest and Corporate Stock” (hereinafter the “Exchange Petition”) was filed in the Succession. The pleading’s introductory sentence reads:
“The petition of Wm. Paul Lawrence, II, Rebecca Lawrence Stenzel, Mary Jane Lawrence Lane and Margaret Ann Lawrence Crawford, with respect represents:”
The Exchange Petition was signed by two groups of attorneys, one listed as representing Paul, Stenzel and Lane, and another listed as representing Crawford.
The Exchange Petition recited that the Succession was essentially free of debt and that it had at least $165,000 in cash. However, the estate taxes and income taxes associated with the decedent’s former business, Merrywood Development Corporation, were estimated at $170,238.
The following paragraphs of the Exchange Petition outline the proposed exchange of a portion of the Succession’s immovable property, which included the Disputed Property:
5.
All parties involved, with the exception of Mary Lawrence Lanham, have agreed that the Executor of the succession should enter into a partnership agreement, a copy of which is attached as | ^Exhibit “A”. The partnership would be formed between the succession, as iimited partner, and Lawrence & Company, Inc., as general partner. Lawrence & Company, Inc., is an existing corporation which owns real estate and which is owned by the heirs and legatees of Nora Taylor Lawrence in approximately the same proportions as their interest in the estate, ...
' [6]-
Under the terms of the partnership agreement, the Executor of this succession, would convey $123,750 cash, 75% of the succession’s stock in Merrywoods Development Corporation and a 75% interest in most of the immovable properties of this succession to the new partnership as a capital contribution in exchange for 75,000 units of partner- ■ ship interest....
*270 7.
The Executor would also transfer $41,250 cash, 25% of the succession’s stock in Merrywoods Development Corporation and a 25% interest in most of the immovable properties of the succession to Lawrence & Company, Inc. in exchange for 974 shares of non-voting stock in Lawrence & Company, Inc.
* * *
10.
The overall impact of these transactions is to convert the form of business of Merrywoods Development Corporation from a corporation to a partnership, which is advantageous for tax reasons, and to place most of the remaining immovable properties of the succession in a development partnership for management purposes.
The Exchange Petition referenced La. C.C.P. art. 3291 et seq. as the procedure for authorization of the exchange. Lan-ham was served because of her opposition to the proposed undertaking. Although the first numbered paragraph of the petition recites Paul’s status as executor, legatee and trustee of the Trusts, it is disputed whether he appeared as a petitioner individually, or in his representative capacity as executor and trustee, or in some or all capacities.
After Lanham’s formal opposition to the proposed exchange, a hearing on the matter, and publication of notice of the exchange, the trial court granted the executor authority to execute the partnership agreement for the new Merrywoods Company (“Merrywoods”) and to make the transfer of the immovable property to the partnership. The trial court’s December 1987 order authorizing the exchange | ¿(hereinafter the “Exchange Judgment”) is now sought to be annulled by the plaintiffs. On January 8, 1988, the Disputed Property was transferred by the Succession to Merrywoods by documents recorded in Bossier Parish.
In May, 1991 with the succession proceedings still pending, Paul, Stenzel, Lane, Crawford, Lanham, Merrywoods, Lawrence & Company, Inc. (hereinafter “Lawrence, Inc.”) and the Succession of Nora Taylor Lawrence executed an agreement (hereinafter the “Agreement”) by which the parties proposed (i) to terminate the Merrywoods partnership, (ii) to transact additional transfers of property, and (iii) to close the Succession. According to the plaintiffs’ allegations, on June 7, 1991, Paul, Stenzel and Lane petitioned the trial court to authorize the exchange of succession property pursuant to the terms of the Agreement and for a judgment of possession closing the Succession. Lanham and Crawford were served with this petition on June 12,1991.
In 1991, by virtue of the prior exchange authorized by the 1987 Exchange Judgment, the Disputed Property had been transferred to Merrywoods from the Succession. Merrywoods was a limited partnership comprised solely of the Succession, as limited partner, and Lawrence, Inc. as the general partner. The 1991 Agreement terminated Merrywoods. Upon the termination of Merrywoods, the Succession’s undivided interest in the Disputed Property as a partner of the former partnership was to be immediately transferred to Lawrence, Inc. in exchange for 3098 shares of the corporation and the corporation’s assumption of all liabilities of Merrywoods and the Succession. Also, for that same consideration of 3098 shares, the Succession transferred certain undivided interests in other immovable properties to Lawrence, Inc. The Agreement states that following the foregoing transactions the sole remaining asset of the Succession was to be the 3098 shares of stock in Lawrence, Inc. All of these transactions set forth in the [.^Agreement were made subject to court approval and authorization for the exchange of the immovable property of the Succession pursuant to La. C.C.P. art. 3291, et seq.
*271 Additionally, the Agreement provided for the conveyance by Lawrence, Inc. of the other tracts of land formerly owned by the Succession to Lanham and Crawford in exchange for all of their stock in Lawrence, Inc., including the shares they were to inherit from the Succession in the judgment .of possession contemplated by the Agreement. The Agreement stated as a “suspensive condition” of the contract that Lawrence, Inc. “shall obtain the cancellation of all mortgages and encumbrances against the properties herein conveyed to Lanham and/or Crawford.”
On August 28, 1991, in a “Judgment Approving Agreement, Authorizing Exchange, and Placing Legatees in Possession” (hereinafter the “1991 Judgment”), all of the transactions proposed by the Agreement were approved by the trial court. The 1991 Judgment recites that publication of the proposed exchange had been made and no opposition had been filed. Accordingly, Paul, as executor, was authorized to execute all documents necessary to effectuate the Agreement including the exchange in favor of Lawrence, Inc. of all “properties of any nature or kind, movable or immovable,-corporeal or incorporeal, now or hereafter owned by the succession, it being the intent of this clause to vest all properties of the succession in Lawrence & Company, Inc. in exchange for [3098 shares of] stock in said corporation.” This 1991 Judgment also was the judgment of possession for the Succession, and the ownership and possession of the Succession’s 3098 shares of stock in Lawrence, Inc. (the Succession’s sole remaining asset) were recognized in Paul (l/9th), Stenzel (l/9th), Lane (l/9th), Crawford (l/3rd), and Lanham (l/3rd). The two testamentary Trusts for Crawford and Lan-ham were not |fimentioned in the Agreement nor included as “the sole heirs and legatees” recognized in the August 28, 1991 judgment of possession. The five year terms for the Trusts would have ended on August 17, 1991, five years after the death of Mrs. Lawrence.
As a result of the Agreement and the 1991 Judgment, plaintiffs, as set forth above, were to have received from the Succession the ownership of certain lands other than the Disputed Property. The acquisition of. those lands was to be made free from all encumbrances, and Lawrence, Inc. assumed the estate tax liabilities of the Succession. On September 8, 1992, the Internal Revenue Service filed a notice of lien against the Succession properties which resulted in the public sale of a portion of the property conveyed by the 1991 Agreement to plaintiffs. Plaintiffs therefore assert, in the alternative, that the “suspensive” condition of the Agreement and the exchange of properties contemplated by the 1991 Judgment were never fulfilled.
On August 25, 1992, Lawrence, Inc. executed a dation en paiement in favor of TriState Bank & Trust conveying to the bank the Disputed Property. Tri-State is the successor in title to Tri-State Bank & Trust.
Crawford and Lanham instituted this action contesting Tri-State’s ownership of the Disputed Property in January 1998. The plaintiffs claim that both the 1987 Exchange Judgment and 1991 Judgment were not obtained pursuant to La. C.C.P. art. 3291, et seq. Although various flaws in the proceedings are alleged, they emphasize primarily the failure of the executor to have served notice on the trustee of the Trust pursuant to La. C.C.P. art. 3293. Thus, plaintiffs assert the nullity of those judgments and the lack of authority for the exchange of the Succession property to Merrywoods and Lawrence, Inc. While claiming their individual ownership of an undivided two-thirds interest in all immovable property 17of the Succession, they also assert that they are “the proper parties' to bring the instant petitory action on behalf of the Succession.” The plaintiffs pray for recognition of their ownership and further pray for judgment “ordering the return to petitioners of all property of any nature or kind, movable or immovable, corporeal or *272 incorporeal, owned by the Succession of Nora T. Lawrence and taken under the provisions of the Agreement of May 2, 1991.”
On March 23, 1999, Tri-State filed a Dilatory Exception of Lack of Procedural Capacity, Peremptory Exceptions of Prescription, Res Judicata and No Right of Action. Tri-State asserted alternatively that a succession representative or the trustee of the Trusts was the proper party to bring the action. Additionally, TriState argued that the one year prescription for the nullity of judgments under La. C.C.P. art. 2004 applied or that the attack on the Succession orders was barred by res judicata. Following a hearing on these exceptions, in its oral ruling, the trial court stated that the plaintiffs were parties to the proceedings in which the 1987 Exchange Judgment and the 1991 Judgment were rendered and that res judicata barred their re-litigation of those prior rulings. Additionally, the trial court stated that plaintiffs had no right of action. Following judgment on the exceptions,[2] Lanham and Crawford now appeal.

Discussion

Lanham and Crawford, as the descendants of Nora Taylor Lawrence and as the beneficiaries of the former testamentary Trusts, seek to set aside the two transfers of the Disputed Property authorized by administrative orders of the trial court. As a result of these two orders, the 1987 Exchange Judgment and the 1991 Judgment, the succession’s ownership of this immovable Disputed Property | sultimately became owned in 1991 by Lawrence, Inc. Though the 1991 conveyance was between the Succession and Lawrence, Inc., the alleged flaws in that transaction are now asserted by successors claiming a two-thirds interest to the closed Succession against the successor in title to Lawrence, Inc.
The jurisprudence concerning attacks on the validity of transfers of property from a succession reveals differing rationales and views of the cause of action. Key v. Salley, 43 So.2d 498 (La.App. 2d Cir.1949), affirmed, 218 La. 922, 51 So.2d 390 (1951); Sun Oil Co. v. Roger, 239 La. 379, 118 So.2d 446 (1960); Caldwell v. Hay, 170 So.2d 194 (La.App. 2d Cir.1964); Bordelon v. Bordelon, 180 So.2d 855 (La.App. 3d Cir.1965); Pete v. Pete’s Estate, 253 So.2d 650 (La.App. 3d Cir.1971); Williams v. Hamilton, 351 So.2d 863 (La.App. 2d Cir.1977); Succession of Lewis, 440 So.2d 899 (La.App. 2d Cir.1983), writ denied, 443 So.2d 1119 (La.1984). Some of these decisions consider the implications of former La. C.C. (1870) art. 3543, now La. R.S. 9:5622.[3] Since an alleged defective succession order or judgment underlies the transfer, this court has on occasion considered the provisions for the nullity of judgments, La. C.C.P. art. 2001, et seq., while, in another opinion, rejected their application altogether. Succession of Lewis, supra and Williams v. Hamilton, supra. The present case is further complicated by the fact that La. R.S. 9:5622 concerns itself *273 with problems of “informalities” of sales “authorized by an order of the court” while this case concerns an exchange.[4]
| aMost of the above cited cases involve a transfer of property from a succession to a third party purchaser who is the defendant in the action. Some of the defendants in the cases were subsequent purchasers from the initial vendee of the succession, like Tri-State. In these settings where the purchaser is not a party to the succession proceedings and has acquired in reliance upon a recorded act of transfer authorized by a court order, many courts have expressed the concern that the purchaser should not be bound to look further back in the succession proceedings than the order directing the sale. Key, supra, 43 So.2d at 500. One court has even expressed the view that, as to an innocent third party purchaser, there is no cause of action for nullity of the transaction due to irregularities in the succession proceedings leading to the order authorizing the sale.[5] Pete, supra.
From our review of the foregoing jurisprudence, the legislation, and the plaintiffs’ petition, we view this action as one for the nullity of a contract as opposed to an action for nullity of the succession judgments. The exchange of the Disputed Property in favor of Lawrence, Inc. is sought to be annulled. Considering the grant of the exception of res judicata in this nullity of contract action, we believe the trial court was mistaken in its ruling. This is not a claim that has ever been litigated before and is only incidentally related to the prior succession proceedings by which the 1989 Exchange Judgment and the 1991 Judgment were obtained. Tri-State was not a party to those Succession proceedings. Thus, under this state’s measure >for res judicata there was nothing actually litigated, nor was final judgment previously rendered between these Imparties. La. R.S. 13:4281.[6] The trial court’s grant of the exception of res judi-cata is reversed.
Tri-State’s other peremptory exception of no right of action, which was also granted by the trial court, raises the significant concern that while the plaintiffs claim only a two-thirds interest in the former property of the Succession, they seek *274 to have the entire ownership of the Disputed Property returned to the Succession. In view of the jurisprudence regarding the reopening of a succession (see Succession of Villarrubia, 95-2610 (La.9/5/96), 680 So.2d 1147), we are not convinced that the reopening of the Succession is appropriate and required at this time. Nevertheless, since the co-heirs or legatees recognized in the 1991 Judgment of Possession for the remaining one-third interest in the Succession have not been made parties to this suit, the joinder of all parties needed for just adjudication under La. C.C.P. art. 641, et seq. is not present.[7] The failure to join a party under La. C.C.P. art. 641 et seq. may be noticed by an appellate court on its own motion. La. C.C.P. art. 645. Estate of Bradford v. Thomas, 29,807 (La.App.2d Cir.9/24/97), 700 So.2d 1030. Accordingly, while the trial court’s recognition of no right of action was apparently based on the concern that plaintiffs claim only two-[thirdsn interest in the Disputed Property, we hold that the appropriate procedure to address this concern is by the joinder of all the co-heirs of the Succession.

Conclusion

For the reasons expressed, the judgment sustaining the peremptory exceptions of res judicata and no right of action is reversed. The case is remanded for a determination by the trial court of all parties needed for just adjudication consistent with La. C.C.P. art. 641, et seq., and for further proceedings consistent with this opinion. Costs are assessed to appellants.
REVERSED AND REMANDED.
PEATROSS, J., concurs in the result.

. In addition to Tri-State, the suit originally involved other transferees of portions of the succession property. A settlement dismissed the claims against these defendants. Lawrence & Company, Inc. was also named as a defendant but has never answered the petition.

. The exception of no cause of action was not pleaded to the trial court, and in the reasons for judgment, the court specifically granted the exception of no right of action. Nevertheless, the written judgment stated that the exceptions of res judicata and “no cause of action" were granted. Since the parties have briefed the issue of no right of action, we therefore consider that the court ruled on that exception despite the error in the written judgment.

. La. R.S. 9:5622 provides:
All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this Sate, to sell at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were owners or part owners at the time of making it, and in the event of such ownership or part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication or private sale thereof.

. While we recognize that Civil Code article 2667 makes the substantive provisions on sales applicable to an exchange, it is unclear whether La. R.S. 9:5622 regarding the relative nullity of court-ordered sales would govern this case or whether the general provision for the prescription on nullities may apply. La. C.C. art. 2032. Cf., Fried v. Bradley, 219 La. 59, 52 So.2d 247 (1950). In any event, prescription was not addressed in the trial court's ruling, and we may not notice the peremptory exception of prescription on our own. La. C.C.P. art. 927(B).

. La. R.S. 9:5622 clearly implies that a cause of action for nullity exists to raise defective informalities leading to the court order for a sale. While La. C.C. art. 2035 apparently provides an affirmative defense to a nullity action in favor of a third party purchaser in good faith, the assertion of nullity of a contract against a third party purchaser, such as Tri-State, is enough to state a cause of action requiring the affirmative defense to be proven.

.La. R.S. 13:4231, which became effective January 1, 1991, slates:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

. La. C.C.P. art. 641 provides:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.